SELMA A. POGALZ AND ANOTHER v. VINCENT
T. KENNA.

126 N. W. (2d) 458.

February 21, 1964—No. 39,025.

*James K. Rietz, Cragg & Barnett,* and *David A. Bailly,* for appellants.

*John M. Smith,* for respondent.

FRANK T. GALLAGHER, C.

Appeal from an order of the district court denying plaintiffs' motion for judgment notwithstanding the verdict or for a new trial.

The action arose out of a collision which occurred at the intersection of U. S. Highway No. 14 and an unmarked township road in Steele County at about 9 a. m. on January 27, 1961.[1]

There were no witnesses to the accident except plaintiff Selma A. Pogalz, driver of the car owned by her husband, plaintiff William Pogalz, and defendant, Vincent T. Kenna, driver of the car owned by the County of Steele.

At the place where the collision occurred, Highway No. 14 is a two-lane highway, running generally east and west. The township road, which intersects it at right angles, runs north and south. There are hexagonal red stop signs restricting the traffic on the township road as Highway No. 14 at this point is a through highway. Running parallel to Highway No. 14, about 100 feet to the south, are some railroad tracks.

Defendant testified that he was going north on the township road; that he stopped at the railroad tracks and looked up and down the

---

[1]Two actions were consolidated for trial: (1) An action brought by Selma A. Pogalz and William Pogalz against defendant Kenna for personal injuries sustained by Selma and hospital and medical expenses incurred by William, and for damages claimed by William for loss of use and damage to his car; (2) an action by the County of Steele against Mr. and Mrs. Pogalz for damage to its car, driven by Kenna. Because of their consolidation four forms of verdicts were submitted to the jury: Two in the action by Mr. and Mrs. Pogalz against Kenna, permitting the jury to find for plaintiffs, and assess their damages, or to find for the defendant; and two in the action brought by the county, permitting the jury to find in its favor and assess its damages, or to find for defendants Pogalz.

tracks, pulled across, stopped again in line with the stop sign approximately 15 feet south of the paved portion of Highway No. 14. It was his recollection that he remained there for about 30 to 60 seconds. He said that while he was there an automobile, three vans, and another automobile on Highway No. 14 passed through the intersection, going west. He also observed an eastbound car and a van about 300 feet to the west approaching the intersection. He said that he knew they were too close for him to try to cross Highway No. 14 so he remained stopped. After the eastbound vehicles cleared the intersection about 200 feet, he said that he started to enter it. Before doing so he said that he looked to his right (east) but saw nothing and to his left (west) where he saw "something way down the road," but at no time before the impact did he ever see the car driven by Mrs. Pogalz. He was asked:

"The first time that you realized that she was anywhere near you was at the time of the impact?

"A.   That's right."

Defendant said that the impact took place in the north lane of Highway No. 14, in which Mrs. Pogalz was traveling west. When asked if the front of his car was just entering the lane at that time he answered, "Well, I don't know how I can answer that. * * * I would say I was in the lane probably." He said that the front end of his car had gotten across the centerline and that it was "struck right at the door." The witness testified that the Pogalz car was in the ditch after the impact, while the car he was driving was headed west "and I just let it coast a little bit to get it off of the pavement."

Mrs. Pogalz testified that at the time of the collision she was driving her husband's 1959 Plymouth sedan west on Highway No. 14 toward Owatonna at about 40 m. p. h. It was a clear, "sunshiny" day and the roads were dry and good. She said there was a "lot of traffic" going east on Highway No. 14, but not much going west. She said that as she approached the township road upon which defendant Kenna was driving, she saw him as he went across the railroad tracks "and then he came to a rolling stop for the stop sign for the highway." When she first saw him she thought she was about a half mile east of the in-

tersection, and when he stopped at the sign she was about a quarter of a mile from the intersection.

As she continued west towards the intersection she met some cars, a semitrailer, and some pickups—she did not recall how many—going east on Highway No. 14. At that time she said she was very close to the intersection, "maybe a car length." After the eastbound vehicles had passed her, she saw the Kenna car again and he had started to come across the pavement in the south lane. At that time she said she was "right onto the intersection, or very close to the intersection." She further testified:

"Q. And what did you do then?

"A. I put on my brakes.

"Q. And what happened?

"A. Then we—I hit his car.

"Q. What part of your car came in contact with what part of his car?

"A. My front bumper.

\*　　\*　　\*　　\*　　\*

"A. As I recall, it hit the front door."

The witness said she then "kind of blacked out" and did not remember anything till she saw defendant, who had walked over to her car.

In the action brought by Mr. and Mrs. Pogalz against Kenna, which is the one involved in this appeal, the jury found for Mr. Pogalz in the sum of $1,358.20 for damages to the car and rental of a replacement car. The verdict also stated, "We find both parties to blame." In the case brought by the county against Mr. and Mrs. Pogalz the jury found for the defendants. Plaintiffs moved for judgment notwithstanding the verdict, on the grounds that the verdict is not sustained by the evidence, is contrary to law, and that the evidence sustained a verdict for them, or for a new trial. The motion was denied and this appeal was taken.

Plaintiffs assign as error the court's denial of their motion for judgment notwithstanding the verdict and for a new trial on the question of damages only; of their motion for a directed verdict or for an instruction that Mrs. Pogalz was free from negligence as a matter of law;

and of their motion for a new trial on the grounds that the verdict is not sustained by the evidence. All of those assignments are based on their position that the court erred in holding that there was evidence from which a jury could find Mrs. Pogalz guilty of negligence. They also contend in other assignments of error that the verdict is void because the jury was confused as to the meaning of the various verdict forms, and that the court erred in denying their motion for a new trial in the interest of justice. Plaintiffs raise the following legal issues:

(1) Whether the evidence is sufficient as a matter of law to support the verdict that Mrs. Pogalz was guilty of contributory negligence.

(2) Whether the record shows that the jury, as a result of requests for additional instructions, became so confused as to the meaning of the various verdict forms as to render its verdict void.

■ It is plaintiffs' contention that the only theory advanced by defendant as to the negligence of Mrs. Pogalz was that she did not have the right-of-way—that she lost it under Minn. St. 169.20, subd. 3—and was therefore guilty of negligence in failing to yield the right-of-way to defendant Kenna.[2]

Plaintiffs claim that it is clear from the evidence that Kenna stopped at the stop sign for about 30 seconds and yielded to several vehicles before proceeding into the intersection; that when he pulled onto the highway Mrs. Pogalz was so close to the intersection as to constitute an "immediate hazard." They contend that her vehicle's being an immediate hazard to Kenna on a through highway gave her the right-of-way under the statute.

---

[2]Minn. St. 169.20, subd. 3, provides in part: "The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, but the driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicles so proceeding into or across the through highway."

With respect to plaintiffs' claim that the only theory advanced by defendant as to Mrs. Pogalz' negligence is that she did not have the right-of-way and was thus negligent in failing to yield to Kenna, it appears from the court's instructions that the issue of negligence of the drivers was not limited to that one theory. The court said:

"* * * [N]egligence may be considered in three different ways. You may find negligence from a violation of the common law rules of the road. You may find negligence from a violation of the statutes * * *. You may also find negligence from a violation of the common law duty that is imposed on everyone that uses the roads and highways."

The court explained the common-law rules of the road by saying:

"* * * Everyone that uses the streets or highways has the right to use them but they must perform certain duties in that connection. And this applies to both of the drivers in this case. They must exercise reasonable care to keep their vehicle under control at all times. They must make reasonable observations of the weather, the time of day, the other traffic on the highway, and they must keep a reasonable lookout, they must proceed at a reasonable rate of speed under the circumstances existing at the time and place we are considering. They must exercise ordinary care to prevent doing harm to others and to keep themselves from being injured. And everyone that is using the road or streets or highways has a right to assume that everyone about him will use reasonable care and will not violate any of these rules of the road. He's entitled to go ahead on that assumption, but when it appears to him that someone is not obeying these laws or rules of the road or is negligent, then he or she must use every reasonable means at his disposal to avoid injury and damage either to another person or vehicle or to himself or herself. If you find, ladies and gentlemen, that any—either of the drivers in this case has violated any of these rules, then you should find that that person was negligent."

The court read to the jury the provisions of § 169.14, with reference to speed on the highways, and § 169.20, subd. 3, and stated that a violation of those statutes was not in itself negligence but prima facie evidence of negligence. After explaining prima facie evidence

and other points of the laws involved, the court charged the jury that if "either of the drivers of these automobiles have failed to exercise the care that a person of ordinary prudence would have exercised under the same or similar circumstances, then you should find either he or she negligent, as the case may be, or both." The court also stated that it was necessary not only that a party be negligent but also that the negligence be the proximate cause of the accident. The charge also defined contributory negligence and proximate cause.

Plaintiffs did not object to the instructions at the trial and made no claim in their motion for a new trial that the charge was erroneous. Under these circumstances the trial court's charge, even though it be erroneous, became the law of the case and whether the verdict is sustained by the evidence is then determined by application of the rules of law laid down in the charge. Smith v. Otto Hendrickson Post 212, American Legion, 241 Minn. 46, 62 N. W. (2d) 354; Coble v. Lacey, 252 Minn. 423, 90 N. W. (2d) 314.

Plaintiffs earnestly argue that as a matter of law there was not sufficient evidence to support the jury's verdict that Mrs. Pogalz was guilty of contributory negligence. Defendant contends, however, that inasmuch as it was a general verdict it is impossible to determine what actions of Mrs. Pogalz were found to be negligent.

The question of her negligence is a close one. However, the jury, after hearing all of the testimony, observing the witnesses, and listening to the court's charge, found the drivers of both cars to blame. On appeal we must view the evidence in the light most favorable to the verdict. Norton v. Nelson, 236 Minn. 237, 53 N. W. (2d) 31. It was a clear, "sunshiny" day and the roads were dry and good. There is no evidence of obstructions except the momentary passing of other cars and trucks going east and west. The jury might have determined under the facts and circumstances here that both drivers were negligent in not keeping a proper lookout.

Mrs. Pogalz estimated the speed of her car at about 40 m. p. h. This was the only estimate received into evidence. The jury was not required to accept her testimony as to speed, even though it was uncontradicted, if it was improbable or if the surrounding facts and cir-

cumstances furnished reasonable grounds for questioning its credibility. Tollefson v. Ehlers, 252 Minn. 370, 90 N. W. (2d) 205; Blazek v. North American Life & Cas. Co. 251 Minn. 130, 87 N. W. (2d) 36. In its instructions about the common-law rules of the road, the court said in part that both drivers were required to use reasonable care to keep their vehicles under control at all times, to make reasonable observations of other traffic, to keep a reasonable lookout, to proceed at a reasonable rate of speed under the circumstances existing at the time and place under consideration here, and to exercise ordinary care to prevent doing harm to others or injuring themselves. The jury was charged that if either of the drivers in this case violated any of those rules or failed to exercise the care that a person of ordinary prudence would have exercised under the same or similar circumstances they should find him negligent. It is our opinion that under the evidence here and the unchallenged instructions of the trial court the questions of negligence, contributory negligence, and proximate cause were for the jury. Kolatz v. Kelly, 244 Minn. 163, 69 N. W. (2d) 649.

Plaintiffs cite Olson v. Anderson, 224 Minn. 216, 28 N. W. (2d) 66; Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320; and Satter v. Turner, 251 Minn. 1, 86 N. W. (2d) 85, 66 A. L. R. (2d) 1178, as controlling. They claim that the facts in the Olson case were almost identical to this case. It appears to us, however, that the facts were quite different. In the Olson case plaintiff sought damages for personal injuries and damage to his car resulting from a collision with defendant's car at an intersection of a county road and a township road. The defendant counterclaimed for damage to his car. The county road runs north and south and the town road east and west at the point of intersection. There was a stop sign for cars on the town road. The view was obstructed by a dense grove in the northeast corner which extended some hundreds of feet from the intersection in both directions, but farther to the north. Plaintiff was a passenger in his car, which was being driven by his son southward on the county road, toward the intersection. The defendant approached the intersection from the east. He was aware of the stop sign at the intersection, but admitted that he did not stop although he claimed to have

reduced speed and changed gears between the stop sign and the traveled part of the county road. At a point about 185 feet east of the intersection he was traveling 30 to 35 miles an hour in the opinion of an eyewitness. The dense grove at the northeast corner of the intersection obstructed the view of each driver towards the other. The collision occurred at the northwest quarter of the intersection, plaintiff's car striking defendant's at about the middle. Plaintiff's driver testified that immediately upon seeing defendant project his car into the road in front of him he applied his brakes and sought to avoid a collision. Defendant asserted that he did not see plaintiff's car until it was within 10 feet of him. At the close of the trial the court directed a verdict for the plaintiff upon the theory that as a matter of law defendant was guilty of negligence which was the proximate cause of plaintiff's injuries, and that there was not sufficient evidence to go to the jury that plaintiff's driver was negligent. The only question submitted to the jury was the amount of plaintiff's damages. We held in that case that the evidence of defendant's negligence was conclusive; that he was aware of the stop sign and ignored it; and that by doing so he violated his duty to stop, look for, and yield the right-of-way to cars within the zone where they constituted an immediate hazard, citing § 169.20, subd. 3.

In the instant case, it is undisputed that defendant Kenna stopped at the intersection for at least 30 seconds prior to entering it, and that he yielded the right-of-way to vehicles passing each way through the intersection of Highway No. 14. We do not consider the Olson case authority on the question of the negligence of the drivers in the case before us.

The facts in the instant case are not identical with those in either the Schleuder or Satter cases. The Schleuder case involved a collision between plaintiff's and defendant's cars at the intersection of a trunk highway and a gravel road. At the northeast corner of the intersection at the time of the accident was a field of standing corn. We determined under the facts in that case that the negligence and contributory negligence of the parties were properly submitted to the jury. The Satter case also involved a fact situation not identical with the present

one. We determined there that the issues of negligence and proximate cause were for the jury under the evidence. Each case must be determined on its own facts.

Plaintiffs contend that the jury was so confused as to the meaning of the various verdict forms submitted to it that the verdict returned was meaningless and void.

A verdict must be certain, positive, and free from all ambiguity or obscurity. Verdicts must be reasonably construed with reference to the pleadings and the record. However informal or indefinite, a verdict is sufficient if the finding of the matter in issue may be clearly ascertained by reference to the pleadings and record. 19 Dunnell, Dig. (3 ed.) § 9817.

It is apparent from the record that some confusion existed among members of the jury, possibly resulting from the fact that two actions were consolidated for trial and four forms of verdicts were submitted. The jury went to the juryroom to consider the cases at 3:46 p. m., April 5, 1962. At 4:54 p. m. it returned to the courtroom to inquire, "If we vote that both parties were at fault can we find or allow damages for Mr. Pogalz?" The court informed the jury that it should consider all of the instructions in its final disposition of the case and further said:

"* * * [I]f you find that both of the drivers involved in this accident were negligent and that negligence on the part of both of them contributed to cause the accident and the resulting damages then you can allow damages to Mr. Pogalz for the damages to his automobile and for loss of use of the vehicle under the rules I have given you * * *.

$$* \quad * \quad * \quad * \quad *$$

"* * * [I]f you find that both drivers were negligent and that such negligence on the part of each was a proximate cause of the accident and damage then they were at fault and the rule I have given you applies on the damages to Mr. Pogalz."

The jury again returned to the courtroom at 10 p. m. When asked by the court if it had reached a verdict, the foreman answered, "We came to 11 to 1, Judge." The court found, however, that it could

not accept the verdict because of the manner in which it had been filled out and sent the jury back to the juryroom, saying:

"* * * You will recall that if you find that both of the parties were negligent and that such negligence was the proximate cause of the damage and the accident then your verdict would be for the plaintiff in the Selma and William Pogalz case against Vincent Kenna for the amount of damages suffered by Mr. Pogalz relating to his automobile and the loss of use of his automobile and I take it from what is written on the one sheet that is signed by all of you that that is the result at least eleven of you reached on this case. I am going to have to send you back out and let you complete the proper form here. If that is the result that you reached then your verdict would be for Selma and William Pogalz in the case against Vincent Kenna and you would have to determine the amount of damages to him as a result of the damage to his automobile and the loss of use to it, and in the case of the County of Steele against Selma and William Pogalz your verdict would be for the defendant if that is the result you reached."

The jury returned to the courtroom for the third time at 10:38 p. m. In the action brought by the county the jury found for the defendants Pogalz. When the court asked the jury if that was its verdict, one juror answered, "No, it isn't mine." Another said it was his intention that Steele County be paid. Another asked, "Is that for 1,300?" The court replied, "That is for no money." A juror then said, "I am confused." After some discussion among the jurors, the foreman said, "They are confused between the two, Judge."

The court then explained that they were only considering, at this time, the action brought by Steele County for damage to the Steele County car and said that "in that case the verdict is for the defendants, means that there is no money to be paid to anybody in that case." One juror when asked if that was his verdict replied "I would say so, yes, if I understand it." Another said it was not his verdict. The court then decided that it would be necessary to send the jury out again. Upon the request of a juror, the court again explained the four forms of verdicts before the jury went back for further deliberations.

It returned to the courtroom for the fourth time at 11 p. m. In the action brought by Steele County it found for defendants Pogalz with one dissenter. In their action against Kenna it awarded plaintiff William Pogalz $1,358.20 "for damage to car and rental of replacement car while his car was being repaired." The verdict added, "We find both parties to blame." One juror dissented.

After the verdicts were read in both cases, the court asked the members of the jury if those were their verdicts. The jury indicated in the affirmative with the exception of the one dissenter.

Plaintiffs contend that the verdict here is clouded by confusion on the part of virtually every member of the jury panel. It is obvious that some members of the jury were apparently confused at times when they returned to the courtroom for further instructions. However, it also appears that the court made very effort on those occasions to clarify the confusion in its discussions with and explanations to the jury. We are also satisfied that when the jury returned the fourth time with its final verdict 11 members understood that they were deciding that both drivers were negligent, that the only party entitled to recover was William Pogalz, owner of the car his wife was driving, and that his damages were in the sum of $1,358.20 for damage to his car and rental of a replacement car while his car was being repaired; and that a twelfth juror did not agree with them.

Affirmed.