INDIANHEAD TRUCK LINE, INC. v.
BRIAN ANDERSON, ADMINISTRATOR OF
ESTATE OF LEO W. ANDERSON.
BRIAN L. ANDERSON, TRUSTEE, v.
INDIANHEAD TRUCK LINE, INC.

139 N. W. (2d) 271.

December 24, 1965—Nos. 39,374, 39,402, 39,403.

---

*Robb, Robb & Van Eps* and *Don James Chantry,* for Indianhead Truck Line, Inc.

*Holst, Vogel & Richardson,* for plaintiff Brian L. Anderson.

*Miley, Nord & Webster* and *Tom Togas,* for defendant Brian Anderson.

KNUTSON, CHIEF JUSTICE.

This is a consolidated appeal from judgments entered pursuant to directed verdicts by the trial court.

As a result of a collision between an automobile occupied by Leo W. Anderson and his wife, Lucile, and a gasoline transport truck owned by Indianhead Truck Line, Inc., and driven by Roy Meyer, an action was commenced by Indianhead Truck Line, Inc., against Brian Anderson as administrator of the estate of Leo W. Anderson to recover for the loss of its truck and load of gasoline. In this action Brian Anderson interposed an answer and counterclaim. A separate action was brought by Brian Anderson as trustee for the next of kin of Leo W. Anderson against Indianhead Truck Line, Inc., to recover for the death of Leo W. Anderson, and a similar action was brought for the death of Lucile Anderson. Indianhead Truck Line, Inc., answered in each of these actions, denying liability.

The statutory presumption of due care available to the trustee in actions for death by wrongful act under Minn. St. 602.04 was waived in order that the actions could be consolidated for trial.[1] After a trial the court di-

---

[1] See, Lambach v. Northwestern Refining Co. Inc. 261 Minn. 115, 111 N. W. (2d) 345.

rected a verdict for defendant in each case, and the plaintiffs have appealed from the respective judgments entered pursuant thereto. The appeals have been consolidated for hearing here and may be disposed of together.

The collision between the Anderson car and the transport truck occurred on U. S. Trunk Highway No. 61 about 5 miles west of Red Wing, Minnesota, on April 9, 1963, at about 7:45 p. m. Mr. Meyer, the driver of the truck, and both Leo and Lucile Anderson died as a result of the collision. At the trial an attempt was made to reconstruct the manner in which the accident occurred, partly by witnesses who were in the vicinity and partly by physical evidence obtained from an examination of the scene.

One Roger Quade testified that he was waiting to enter Highway 61 from a side road near the point of the collision when Anderson passed in front of him headed east, followed by the truck a short distance behind, both traveling about 50 miles per hour. He waited for the car and truck to pass in front of him and then entered the highway and followed the truck a short distance, when he saw the truck pull to the left lane to pass the car. He testified that while the truck turned into the left lane quite fast, he observed it in the left lane and the car in the right lane, and could see a space between them after the truck had reached the left lane. From there on he apparently did not know what happened. He said:

"* * * [W]hen the truck turned out to pass the Anderson car it just seemed like he went into a dark alley or dark tunnel and closed the doors, that's all."

At that time Quade was almost directly behind the two vehicles. He testified that he heard a "long rumbling noise" when the truck began to pass and that the truck rolled over and it and the car came to rest. He said that about 10 minutes later there was an explosion, and then another explosion, but he did not actually see the vehicles come together or collide. Obviously he was mistaken about the time interval, for other witnesses said it happened within minutes or seconds.

Located at the scene of the accident was the Hi-Way Inn. People in the inn testified that just before the accident they heard a person scream;

saw the truck go by on the highway; heard a crash and a second crash; and then saw a fire.

Robert Luhman, who lived with his parents in their home close to the highway near the scene of the accident, testified that he was in the yard when the accident took place. He stated that he first heard tires squealing on the pavement, then a crash, and then a continuous scraping or crushing of metal. He noticed the lights of the car flash down into the ditch and then come up onto the highway where the two vehicles met, and that the car was dragged before both vehicles came to rest. The truck tipped on its side and came to rest near the center of the highway, mostly in the left lane but with the front extending into the right lane. The Anderson car was almost perpendicular with the truck but slightly angled and resting in the right lane and shoulder. He stated that he never saw the car in the left lane of traffic, but he was not in a position to observe whether it was there or not.

The balance of the evidence was based solely on physical facts observed at the scene after the accident, including skid marks and tire marks, parts of vehicles, and measurements, including the position of the vehicles after the accident. A sooty chrome strip from the side of the automobile was introduced and a piece of the truck's aluminum bumper, which had a rubber-like deposit on it and was found in the ditch on the left side of the highway. There was considerable testimony at the trial as to the marks and deposits left on the roadway.

Professor Adolph Lee, an assistant professor of mechanical engineering at the University of Minnesota, who was called by Indianhead Truck Line, Inc., testified that proceeding from the west to the east he noticed a set of dual tire skid marks, obviously caused by a truck, centered 25 and 36 inches respectively from the north edge of the highway at their starting point. He stated that these marks became lighter but were still distinct as they continued eastward, onto the north shoulder and then back onto the road surface, where several of them in pairs extended approximately to the centerline. He observed an aluminum metal deposit in the north half of the road about 25 feet from the dual skid marks, and a long S-shaped tire mark caused by a car, which began on the north half of the highway

but continued to curve into the south half. He also described various other metal and skid marks which he observed.

Deputy Sheriff William Avery was called and testified that he observed some of the marks found by Professor Lee and that there was much glass strewn over the highway on the south half.

Minnesota Highway Patrolman Maurice Messer testified to the location of the vehicles and certain parts of them immediately after the accident and corroborated the testimony of Robert Luhman that the vehicles came to rest with the truck on its side and partly in the south lane.

Based on this evidence the court concluded that it was impossible to tell who caused the accident and directed a verdict in favor of the defendant in all of the causes of action.

The tests applied in determining whether a trial court should direct a verdict have been so frequently stated that it seems useless to repeat them again. It is axiomatic that when a party moves for a directed verdict he admits for the purposes of the motion the credibility of the evidence and every inference which may be fairly drawn from such evidence in favor of the adverse party. We have frequently said that a verdict should be directed only in those unequivocal cases where it clearly appears that it would be the trial court's duty to set aside a contrary verdict if the case were submitted to the jury. Our latest expression is to be found in Majerus v. Guelsow, 262 Minn. 1, 113 N. W. (2d) 450. See, also, Village of Plummer v. Anchor Cas. Co. 240 Minn. 355, 61 N. W. (2d) 225.

Where cases are consolidated for trial each retains its separate identity and the rights of the litigants in each case must be determined by separate verdicts and judgments. Ramswick v. Messerer, 200 Minn. 299, 274 N. W. 179. Applying that rule here, the burden rested on Indianhead Truck Line, Inc., in its case to prove that the Anderson car was driven negligently and the negligence was the proximate cause of the accident. Similarly, in the case brought by Brian Anderson as trustee for the next of kin of Leo and Lucile Anderson, the burden rested on plaintiff to prove by a fair preponderance of the evidence that the driver of the Indianhead truck was negligent and his negligence was the proximate cause of the accident. It is conceivable that under the evidence of the

case a jury could infer that at times both vehicles were across the center-line and were therefore negligent. However, on the question of proximate cause, it is simply impossible to determine whose negligence caused the collision and resulting damage. Neither the testimony from witnesses nor the physical evidence would support one inference more than the other. Any inference as to proximate cause would rest entirely on speculation and conjecture. We said in Village of Plummer v. Anchor Cas. Co. 240 Minn. 355, 359, 61 N. W. (2d) 225, 227:

"* * * Where the entire evidence sustains with equal justification two or more inconsistent inferences so that one inference does not reasonably preponderate over the others, plaintiff has not sustained the burden of proof on the proposition which alone would entitle him to recover and it becomes the duty of the trial court to direct a verdict for the defendant because any verdict to the contrary would be based on pure speculation or conjecture."

In view of that situation there was nothing the trial court could do but hold that none of the plaintiffs has sustained his burden of proving by a fair preponderance of the evidence that the negligence of the defendant was the proximate cause of the collision and the resulting damage.

Affirmed.