## FERN W. PETERSON AND ANOTHER v. MINNEAPOLIS STAR & TRIBUNE COMPANY AND ANOTHER.

164 N. W. (2d) 621.

January 17, 1969—No. 41015.

---

[2] See, Howe v. Jameson, 91 N. H. 55, 13 A. (2d) 471; Annotation, 31 A. L. R. (2d) 190, 196.

[3] Rule 106, Rules of Civil Appellate Procedure.

*Robins, Davis & Lyons, Paul W. Urbanek, Jeffrey S. Halpern,* and *Laurence Zelle,* for appellants.

*Faegre & Benson* and *G. Alan Cunningham,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

Appeal from orders denying plaintiffs' motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial.

The action herein was brought to recover damages sustained by plaintiffs, Roland O. Peterson and his wife, Fern W. Peterson, as a result of an accident which occurred on November 25, 1963, at the intersection of Sixth Street and Third Avenue South in Minneapolis. Defendant Minneapolis Star and Tribune Company, the owner of the truck involved, counterclaimed against plaintiffs. Defendant Otto Fodstad was the driver of the truck.

The intersection was controlled by semaphores at all four corners. At approximately 12:20 p. m., immediately preceding the accident, Roland O. Peterson was driving south on Third Avenue in a 1962 Buick; his wife Fern was a passenger in the front seat. Third Avenue consists of six lanes, three running south and three running north. Traffic was light on Third Avenue during the time of the accident. The street was dry and the weather was clear. Peterson was driving in the middle lane of Third Avenue for at least a block prior to the impact. He testified that he had attained a speed of between 20 and 25 miles per hour and that as he entered the Sixth Street intersection he observed that the traffic lights were green for vehicles traveling south on Third Avenue. Peterson also testified that as his vehicle reached the intersection he observed the Star and Tribune Company truck approaching just west of the Sixth Street crosswalk. He said he applied his brakes at the intersection and that the right front bumper of his car collided with the front bumper of the truck and that a second impact occurred when the back end of the truck slid up against his car.

It appears from the record that one Gary Smith was an eyewitness to the accident and testified that he had been walking his bicycle in a westerly direction up the north side of Sixth Street toward Third Avenue South; that he stopped at the northeast corner of the intersection because the traffic light on the northwest corner was red; and that from his position he was able to observe both vehicles prior to the impact. He testified that he continued to watch the truck as it proceeded toward him and he stated, "I was watching because I didn't think it was going to stop for the light, it kept on going at the same speed." He further testified that at the time of the collision the traffic lights indicated "[r]ed for the traffic on 6th Street, green for * * * 3rd Avenue."

Defendant Fodstad, driver of the truck, testified that prior to the accident he had been proceeding east on Sixth Street. Sixth Street is a one-way, running from west to east, with three driving lanes and a parking lane on either side of the street. According to Fodstad his vehicle was traveling in the lane nearest to the parked cars on the north side of the street at approximately 20 miles per hour as he proceeded from Second Avenue South to Third Avenue South. He said that he applied his brakes "by the crosswalk" and that the vehicles collided just north of the middle of the intersection. He also testified that the semaphore was green for him as he approached and entered the intersection.

Roger L. Olson, another pedestrian in the vicinity at the time, testified that he had been walking east on the north side of Sixth Street and had reached the northwest corner of the intersection prior to the accident and that when he reached this corner the traffic light indicated "red for anyone coming from the west." He stated that when he noticed the semaphore on the southeast corner first changed to yellow he stepped off the curb but immediately stepped back onto the curb because a white car was proceeding through the intersection from Third Avenue; that after the light turned green he again started to walk across the street and then heard the squeal of brakes and saw the Peterson vehicle and the truck collide in the middle of the intersection.

Two police officers, John Andreason and Charles Hawkinson, from the traffic division, were called to the scene of the accident. Officer Andreason testified that he measured the tire skid marks left by the truck and

that this investigation revealed 12 feet of skid marks from the rear wheels to the point of impact in the driving lane nearest to the parked cars on the north side of Sixth Street, and that after the point of impact the skid marks measured 18 feet with "a slight arc to the southeast" veering into the center driving lane of Sixth Street. Officer Hawkinson testified that he measured the skid marks left by the Peterson automobile and that this measurement indicated 22 feet of skid marks to the rear wheel; that these skid marks were in the lane closest to the parked cars on the west side of Third Avenue; and that there were also sliding skid marks left by the Peterson car at the point of impact. He testified that these marks were the result of the car's front end being swung in an easterly direction after impact.

■ The trial court properly instructed the jury that as a matter of law Fern W. Peterson was not guilty of contributory negligence.

■ Four forms of verdict were submitted to the jury. The fourth verdict read as follows:

"We, the jury, in the above-entitled action find that plaintiff Fern W. Peterson on her claim against the defendants is not entitled to recover; that plaintiff, Roland O. Peterson on his claim against the defendants is not entitled to recover; and that the Minneapolis Star and Tribune Company, one of the Defendants, on its counter-claim against plaintiff Roland O. Peterson, is not entitled to recover."

Plaintiffs' counsel took exception to the submission of this fourth verdict form, which exception was overruled. The jury returned for further instructions during the period of its deliberation and asked the following question:

"It is the question as far as these being interpreted. We had some trouble interpreting them as if there was contributory negligence on both parties, can one still be held liable as far as Fern Peterson is concerned."

The court responded to this inquiry with a rereading of the same liability instructions given before the retirement of the jury. Following this restatement, Foreman Rude stated that he did not understand the verdict form which allowed only Fern Peterson to recover. The trial court then repeated this verdict form:

" 'We, the jury in the above-entitled action find for the Plaintiff, Fern W. Peterson, and against the Defendants and each of them, and assess her damages in the sum of blank dollars.

" 'We also find for the Defendants and each of them with respect to the claim of Plaintiff Roland O. Peterson.'

"This is the form you will use if you find that Plaintiff Fern W. Peterson is entitled to recover, and if you find her husband is not entitled to recover."

The court went on to explain the meaning of proximate cause and fair preponderance of the evidence.

Thereafter, the jury returned the verdict which denied relief to all parties. Fern Peterson moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial and her husband moved for a new trial, but these motions were denied. This appeal followed.

Plaintiffs argue that the instant case is not a situation where the evidence was in such a state of equilibrio as to justify the jury's verdict, quoting as follows from Benson v. Northland Transp. Co. 200 Minn. 445, 449, 274 N. W. 532, 534:

"* * * If the evidence is *in equilibrio* it cannot be said to preponderate in plaintiff's favor, and therefore he has failed to sustain the burden of proof which is upon him. In other words, the plaintiff's proof fails to show the cause of the accident. It leaves the cause in conjecture and speculation as between different probabilities and possibilities. The rule has no application here because plaintiff advanced only one theory as to how the accident occurred. She testified positively that the porter pushed her and and caused her to fall. She did not advance two different theories or possibilities upon which to predicate liability, under one of which defendant would be liable and under the other not. She advanced only one theory of liability, and there were no contending theories, possibilities, or probabilities which weighed equally against and for the defendant. The fact that defendant denied plaintiff's version of the accident and produced evidence that it did not happen in the manner claimed by plaintiff does not make the evidence *in equilibrio*. All the evidence made a question for the jury as to whose version it would adopt."

Plaintiffs assert that they advanced only one theory of liability—that the accident was solely caused by the negligence of the driver of the truck in proceeding through a red light. They contend that they made out a prima facie showing that his negligence was the sole cause and that the fact that defendants denied plaintiffs' version of the accident and produced evidence to the contrary did not in the instant case, as it did not in the Benson case, "make the evidence *in equilibrio.*"

Plaintiffs contend that if the jury had properly carried out its function a verdict would necessarily have had to be entered for plaintiffs or defendants.

Plaintiffs also cite Wick v. Widdell, 276 Minn. 51, 149 N. W. (2d) 20, where there were also two plaintiffs but the jury returned a verdict which denied recovery "to plaintiff or defendant." On appeal we held that the verdict established the concurring negligence of plaintiff and defendant drivers, and concluded that the jury's verdict established that plaintiff-bailor had sustained his burden of proof as to the defendant's negligence and was therefore entitled to recover. The verdict form used by the jury in the instant case specifically precluded this conclusion and therefore we fail to see where the Wick case is controlling.

Defendants contend that a party who has had his day in court and failed to prove by a preponderance of the evidence negligence and causal connection against the party from whom he seeks recovery is not entitled to relitigate the case. The trial court instructed the jury as follows:

"* * * If you find that a fair preponderance of the evidence is with the side upon which rests the burden of proof as to the issue, then that side's contention as to the facts pertaining to the issue has been established or proved by a fair preponderance of the evidence. If, on the other hand you find that a fair preponderance of the evidence as to the issue is with the other side, or if you find the evidence relating to the issue is evenly divided in weight, then the contention as to the facts pertaining to the issue urged by the side upon which rests the burden of proof has not been established or proved by a fair preponderance of the evidence."

It would appear that the above instruction provides for, and the verdict returned, expresses the finding that no party sustained his burden of con-

vincing the jury that the negligence of the other caused the accident. It would seem that the record unequivocally supports the jury's finding that no one sustained his or its burden of proof.

Since plaintiffs say that they advanced only one theory of liability against defendants, it is necessary to examine the facts relating directly to this theory. In order to recover under this single theory, plaintiffs have the burden of proving by the preponderance of the evidence that Fodstad traveled through a red light and that his action in this respect proximately caused the accident. An examination of the record for evidence relating to this issue shows many of the conflicts in the evidence, and thus points up the problem the jury faced in attempting to decide whether either Fodstad or Peterson was negligent, proximately causing the accident.

For instance, Fodstad testified the light was green for Sixth Street when he crossed Second Avenue, when he entered Third Avenue South, and when the impact occurred. Roger Olson testified the semaphore was yellow for Third Avenue when he saw Peterson 15 feet north of the intersection, green for Sixth Street when he returned to the northwest corner, and red for Third Avenue and green for Sixth Street when the impact occurred.

According to the testimony of Roland Peterson he had no idea when the light turned green for Third Avenue but was only adamant it was green when he entered the intersection. Fern Peterson testified the semaphore was green for Third Avenue "as we approached the crosswalk." Gary Smith, from two different corners, gave two contradictory versions. In the first he stopped on the northeast corner and waited there for several seconds before the impact occurred. During this complete interval he testified the light was red for Sixth Street. On cross-examination, however, he admitted that in a prior sworn deposition he had stated that he had already crossed Third Avenue with a green light for Sixth Street and saw the truck when he was 10 to 15 steps west of the northwest corner and then saw the impact occur.

It would seem, absent mechanical failure, that each of the above versions is mutually exclusive, and that the light could not be green when Fodstad crossed Second Avenue and entered Third Avenue and still

be green for Peterson crossing Sixth Street. Neither could the semaphore be yellow for Third Avenue when Olson saw Peterson approaching Sixth Street and still be green for Peterson "when I entered the intersection."

Since plaintiffs state their sole theory of liability against defendants is that Fodstad traveled through a red light, it is clear, as above set forth, that the evidence was in hopeless conflict and confusion and that under the circumstances the jury could easily determine that no one had proved his case on this point by a fair preponderance of the evidence.

The record indicates that defendants did not limit their theory of liability to only Peterson's semaphore violation. They also submitted evidence relating to his speed, attentiveness, and lack of lookout. As to these issues, the evidence was as contradictory and as inconclusive as was the evidence relating to the color of the semaphore. Olson testified that the Petersons were traveling at 30 miles per hour and Peterson testified to 20 to 25 miles per hour. Peterson testified that the first time he saw the Star-Tribune truck it was 40 to 50 feet west of the intersection and he was at the crosswalk, while Fodstad testified he was 20 feet from the intersection when he first saw Peterson 30 feet north of the crosswalk. Fern Peterson testified that when she first saw the truck the two vehicles were each a car length from the intersection.

Apparently such testimony regarding times and speed is inconsistent and only one version, if that, is accurate. These contradictions persist throughout the testimony, Peterson claming that his vehicle was "dead still" at the time of the impact, Fodstad and Olson testifying that Peterson's vehicle was moving. At the same time, the presence and location of witnesses is totally unclear. Smith testified he was on both the northwest and northeast corners at the time of impact, and Olson, standing on the northwest corner, saw no one on either the northeast or northwest corner.

Under all the foregoing circumstances the jury could reasonably conclude that no party making an affirmative claim proved his case. Such a finding is allowable under Minnesota law and the trial court's instructions relating to burden of proof. Since plaintiffs did not at any time except to the burden of proof instruction, that instruction, absent fundamental error, becomes the controlling law of the case. Swigerd v. City

of Ortonville, 246 Minn. 339, 75 N. W. (2d) 217, 72 A. L. R. (2d) 398; Mottinger v. Halfman, 247 Minn. 115, 76 N. W. (2d) 689.

■ It would seem that the plaintiffs' contention is that once either or both parties have produced enough evidence to get to the jury, the jury must adopt one version or the other. But this contention ignores the traditional and unique function of the jury clearly recognized by this court in Cameron v. Evans, 241 Minn. 200, 204, 62 N. W. (2d) 793, 796:

"* * * It is for the jury, not the court, to determine the weight to be given to the testimony of a witness and to decide what the testimony of the witness proves."

We think the instruction given and the verdict returned in this action are in conformity with applicable Minnesota law relating to burden of proof. In a recent decision, Indianhead Truck Line, Inc. v. Anderson, 272 Minn. 497, 139 N. W. (2d) 271, Indianhead, a bailor in the same position as the Minneapolis Star and Tribune Company in this action, sued the estate of a deceased driver for property damage. The trustees of the deceased driver and his deceased passenger sued Indianhead for wrongful death. The cases were consolidated for trial and the presumption of Minn. St. 602.04 was waived. This court said (272 Minn. 501, 139 N. W. [2d] 274):

"Where cases are consolidated for trial each retains its separate identity and the rights of the litigants in each case must be determined by separate verdicts and judgments. Ramswick v. Messerer, 200 Minn. 299, 274 N. W. 179. Applying that rule here, the burden rested on Indianhead Truck Line, Inc., in its case to prove that the Anderson car was driven negligently and the negligence was the proximate cause of the accident. Similarly, in the case brought by Brian Anderson as trustee for the next of kin of Leo and Lucile Anderson, the burden rested on plaintiff to prove by a fair preponderance of the evidence that the driver of the Indianhead truck was negligent and his negligence was the proximate cause of the accident."

In Indianhead this court sustained a directed verdict on the grounds that any other verdict would be based on speculation or conjecture. That case and the one at bar are similar in that there the court ruled as a matter

of law no party sustained his burden of proof, and in the instant case the jury with ample support therefor in the record came to the same conclusion as a finding of fact.

■ It must be said that it was the jury's prerogative, exercised in the case at bar, to find no one sustained his burden of proof. It is clear that here the jury found that no party proved by a preponderance of the evidence negligence and causal connection as against the party from whom each affirmatively sought a recovery. We said in Hagsten v. Simberg, 232 Minn. 160, 165, 44 N. W. (2d) 611, 614:

"The burden rests on plaintiff to establish the negligence of defendants and its causal relation to the death of plaintiff's intestate, whether such proof is circumstantial or direct. In Maher v. Duluth Yellow Cab Co. 172 Minn. 439, 441, 215 N. W. 678, 679, we said: '* * * The negative prevails automatically without evidence either way, and should prevail in the absence of a preponderance of proof for the affirmative. It follows that the negative may well prevail through conjecture or mere possibility if there is nothing stronger for the affirmative. But it is never enough for the affirmative that the evidence suggests possibility or furnishes the basis for a mere conjecture, as distinguished from a reasonable inference, in its favor. The proof must not only agree with but must also furnish reasonable support for the "hypothesis which it is adduced to prove." Lillstrom v. N. P. R. Co. 53 Minn. 464, 55 N. W. 624, 20 L. R. A. 587.' " [1]

---

[1] See, also, Netzer v. N. P. Ry. Co. 238 Minn. 416, 57 N. W. (2d) 247, certiorari denied, 346 U. S. 831, 74 S. Ct. 26, 98 L. ed. 355; Lambach v. Northwestern Refining Co. Inc. 261 Minn. 115, 121, 111 N. W. (2d) 345, 349; Carpenter v. Nelson, 257 Minn. 424, 427, 101 N. W. (2d) 918, 921. Also as stated in Whitman v. Speckel, 237 Minn. 36, 42, 53 N. W. (2d) 558, 561: "Where evidence presents more than one theory as to the manner in which an accident may have occurred, on only one of which liability could attach to a defendant, proof of the latter must fairly preponderate or the action will fail."

See, also, P. F. Collier & Son Co. v. Hartfeil (8 Cir.) 72 F. (2d) 625, 630: "Where the evidence is equally consistent with two hypotheses, it tends to prove neither."

As stated in Petron v. Waldo, 272 Minn. 513, 521, 139 N. W. (2d) 484,

It is stated in the trial court's memorandum made a part of the orders denying plaintiffs' post-trial motions that the four verdict forms submitted to the jury had been approved by counsel for both parties in chambers before the court charged the jury. Under the circumstances, plaintiffs' attempted exception to the fourth verdict form when the jury returned for further instructions is barred by their prior approval, since they had already waived their objection. To have withdrawn the fourth verdict form at the time plaintiffs objected to it would have unequivocally established to the jury that they were duty bound to affirmatively find for one party or the other. Thus, in light of the court's instructions and cases cited herein, this would have been error, since the fourth verdict form provided the jury the alternative that it elected to follow—namely, that no one had established by a preponderance of the evidence the elements required for an affirmative recovery.

■ While plaintiffs contend that the verdict forms are confusing, they fail to specify in what way. We do not find these forms confusing, and unlike the situation in Pogalz v. Kenna, 267 Minn. 340, 126 N. W. (2d) 458, cited by plaintiffs, the jury did not at any time express any confusion as to the verdict forms.

Plaintiffs' argument relating to the instructions given to the jury is barred by Rule 51, Rules of Civil Procedure, since the plaintiffs at no time during or before jury deliberation took exception to any instruction. The exception was raised for the first time in their motion for a new trial. It was not based on an error of "fundamental law or controlling principle" as required by Rule 51.

■ It is our view that from a substantive standpoint the trial court's instructions are correct since the record reveals that the court answered the jury's questions with a correct and proper statement. It is only required of the trial court to give a charge which, as a whole, conveys to the jury a clear and correct understanding of the law. Manion v. Tweedy,

---

490, involving affirmance of a jury's conclusion of no negligence of defendant, since there was sufficient evidence to support the jury finding: "* * * [T]he presumption of correctness which attaches to the verdict precludes any speculation as to whether the jury might in fact have based its verdict on some conclusion that is not supported by the evidence."

257 Minn. 59, 100 N. W. (2d) 124. The trial court responded to the jury's questions as they returned for additional instructions by clearly stating the applicable law and by repeating the material instructions in order to assist the jury to understand the law. Thereafter, it was for the jury to apply that law to the facts at hand. We said in Cameron v. Evans, 241.Minn. 200, 209, 62 N. W. (2d) 793, 799:

"\* \* \* If the charge fairly lays down the law of the case, it is sufficient. Usually it is preferable to give a general charge, if practicable, upon the whole law of the case rather than to run the risk of overemphasizing one side of the case or confusing the jury as is often done by giving requested instructions or particularizing upon specific items."

We believe that the manner in which additional instructions are to be given a jury can best be decided by the trial court and that once the judge has made an accurate and correct charge the extent of its amplification must rest largely in his discretion. An attempt to explain understandable language is merely to confuse. If the instructions given cover the case and are given correctly, that is enough. United States v. Bayer, 331 U. S. 532, 536, 67 S. Ct. 1394, 1396, 91 L. ed. 1654, 1658.

Furthermore, plaintiffs did not state distinctly the matters to which they objected nor the grounds for their objection. Accordingly, they are now barred. Botz v. Krips, 267 Minn. 362, 126 N. W. (2d) 446; Herbst v. Suilman, 259 Minn. 292, 107 N. W. (2d) 45.

Affirmed.