RAYMOND R. SMITH, BY HAZEL L. SMITH,
HIS GUARDIAN AD LITEM, v. MILTON EUGENE
LAFORTUNE AND OTHERS.
RAJALA CONSTRUCTION COMPANY AND
ANOTHER, APPELLANTS.

179 N. W. (2d) 136.

July 31, 1970—Nos. 41738, 41821, 41848.

*Hammer, Weyl, Halverson & Watters* and *Anthony S. Downs*, for appellant Rajala Construction Company.

*Murphy & Kalar*, for appellant E. W. Coons Company.

*D. A. Bourgin, DeParcq, Anderson, Perl & Hunegs*, and *O. C. Adamson II*, for respondent Smith.

*Spellacy & Lano, Ltd.*, and *John A. Spellacy*, for respondent Lafortune.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Theodore B. Knudson, JJ.

OTIS, JUSTICE.

This action arises out of a head-on collision between two automobiles on a bypass temporarily constructed while the main highway was being rerouted. The drivers, Raymond R. Smith and Milton Lafortune, sought to recover damages against the contractor, E. W. Coons Company, hereafter referred to as Coons, and subcontractor, Rajala Construction Company, hereafter referred to as Rajala, for their negligence in failing to furnish adequate warning signs. The jury brought in special verdicts against defendants Coons and Rajala, fixing damages in favor of Smith in the sum of $150,000 and in favor of Lafortune in the sum of $7,000. The trial court denied the contractor's claim for indemnity against the subcontractor. Those defendants appeal from the judgment and from an order denying them judgment n. o. v. or a new trial.

The scene of the accident was the west end of a bypass on U. S. Highway No. 169, two-fifths of a mile from the Pengilly cutoff, part of State Highway No. 65, in Itasca County. The bypass diverted traffic to the south of Highway No. 169 for a distance of .8 of a mile. On the morning of June 5, 1966, between midnight

and 12:30 a. m., plaintiff Smith, driving a Chevrolet, had very nearly reached the west end of the bypass when the front right of his car came into violent collision with the front right of an Oldsmobile being driven by defendant and cross-claimant Lafortune. Both drivers sustained amnesia as a result of their injuries and were unable to recall the events which immediately preceded the collision.

■ On this appeal, defendants Coons and Rajala deny they were negligent in design, location, or placement of warning signs and assert that as a matter of law the proximate cause of the collision was not established by a fair preponderance of the evidence and that the verdicts were therefore based on speculation and conjecture.

As Lafortune approached the bypass, driving from west to east, he passed the following signs: At 2,000 feet, a barricade on each side of the road stating, "Enter Construction Zone, please drive carefully"; a sign stating, "Road Construction 1500 feet"; a sign stating, "Road Construction 1000 feet" with a speed designation, "30 mph"; and a sign stating, "Road Construction 500 feet, 30 mph." Two barricades were erected and placed so as to completely block Highway No. 169 at a point some 350 feet from where the bypass began to veer off the main highway to the south or to the right of eastbound traffic. However, the white centerline had not been obliterated and continued to be visible up to a short distance west of the barricades.

The barricades were 5 feet high and 8 feet long—not reflectorized, but painted with high gloss enamel white and a dull black for contrast. The south barricade contained a black-and-yellow reflectorized sign with the word "By-Pass," on top of which were two lights flashing intermittently. The north barricade contained a reflectorized black-on-yellow arrow, 2 feet by 4 feet, pointing to the south. These barricades were erected under the direction of the state project engineer and the Highway Department's chief inspector.

The bypass was constructed by Rajala. It was dusted and oiled by Coons, in the process of which all but one reflectorized road delineator disappeared. This operation was concluded on June 4, the day before the accident.

Following the accident, the two vehicles and the debris from the collision were found in Smith's westbound lane of traffic, south and in the vicinity of the two barriers. Although the witnesses were not in complete agreement as to the location of the debris, the evidence was compelling that Lafortune was on the wrong side of the road. In this state of the record, the other defendants argue that it is impossible to determine the cause of the accident and that the verdicts are therefore based on speculation and conjecture, citing Indianhead Truck Line, Inc. v. Anderson, 272 Minn. 497, 139 N. W. (2d) 271. There, we held that the physical facts made it impossible to determine which driver was over the centerline, or whether both were, in a head-on collision in which all the parties were killed. "Any inference as to proximate cause would rest entirely on speculation and conjecture." 272 Minn. 502, 139 N. W. (2d) 274. Defendants Coons and Rajala point out that in the instant case both drivers were familiar with the bypass since they had been over it at least once before. The answers to the special verdict do not determine in what respect these defendants were negligent. Hence Coons and Rajala argue that no theory of negligence advanced by Smith and Lafortune preponderates and therefore they cannot prevail.

We do not agree that the case is governed by Indianhead. On the contrary, the verdicts seem to us to be supported by our decision in Larson v. Township of New Haven, 282 Minn. 447, 165 N. W. (2d) 543. Larson involved a single-vehicle accident in which the driver was killed, and there were no witnesses. We sustained a verdict against the township, based on circumstantial evidence which permitted a jury to find that the failure to post a warning sign was the proximate cause of the driver's overrunning a T-intersection. Although the Larson case imposed liability on a municipality, we are of the opinion that

the principles which there applied also govern the case at hand. As in the Larson case, the facts here would permit a jury to find that the contractors, Coons and Rajala, had created a "pitfall, trap, or snare." Although the road approaching the bypass contained four signs at 500-foot intervals west of the barricades, none of the signs warned that a bypass lay ahead or stated whether it was to the right or left of the main highway. Nor did the signs prepare approaching motorists for the appearance of the two large barricades which loomed up on the highway. On the contrary, the failure to obliterate the white centerline led drivers approaching from the west past the entrance to the bypass directly into the barricades.

There were no kerosene flares to guide drivers off the highway at any point along the bypass. Apparently reflectorized delineators originally lining the bypass were removed in the oiling process. Nor were there tapering barricades or flares to steer drivers onto the bypass in a manner familiar to motorists accustomed to traveling on busy freeways.

It was a dark night, and the jury could find that Lafortune followed the centerline to a point where he last remembers seeing headlights when he was some 120 feet west of the barricade, that he thereupon turned his car sharply to the right to enter the bypass, and that in so doing he failed to get back on the right-hand side of the bypass in time to avoid a head-on collision with Smith. We hold that this evidence was sufficient to justify finding that defendants Coons and Rajala were negligent in failing to erect adequate warning signs and that such failure was a proximate cause of the accident.

■ Defendants Coons and Rajala vigorously contend that the marking of the highway, including the obliteration of the centerline and the posting of warning signs or flares, was the sole responsibility of the Highway Department, relieving those defendants of any liability, citing Rengstorf v. Winston Brothers Co. 167 Minn. 290, 208 N. W. 995; Murphy v. G. N. Ry. Co. 189 Minn. 109, 248 N. W. 715; and Otten v. Big Lake Ice Co. 198

Minn. 356, 270 N. W. 133. In addition, they argue that under our decision in Rengstorf, after they have concluded their construction and the state has assumed control of the highway, their duties are at an end.

Dealing with the last issue first, it is enough to say that the completion of the bypass did not terminate the project. It was simply a preliminary step toward reconstructing Highway No. 169. Nor are we prepared to say that under the facts of this case the state had preempted jurisdiction to the exclusion of the contractors. We have recently held otherwise. In Dornack v. Barton Const. Co. Inc. 272 Minn. 307, 137 N. W. (2d) 536, we construed specifications which are here applicable. Section 1706 of the Standard Specifications for Highway Construction of the State of Minnesota Department of Highways in part provides as follows:

"The Contractor shall take adequate precautions to ensure the safety of the general public * * *."

The second paragraph of § 1707 provides:

"The following provisions shall not in any way relieve the Contractor of any of his legal responsibilities or liabilities for the safety of the public."

In the Dornack case we said (272 Minn. 319, 137 N. W. [2d] 545):

"The fact that the contract gives certain assignments to the state involving warning signs, traffic control signs, and barricades does not eliminate the responsibilities of the contractor for the safety of the general public, particularly in view of the provision quoted to the effect that the provisions of § 1707 'shall not in any way relieve the Contractor of any of his legal responsibilities or liabilities for the safety of the public.' "

Whatever may have been the rule prior to that decision, we there made clear the duty of contractors to protect the public from snares, traps, and pitfalls by erecting appropriate warning signs

while constructing or repairing public highways. This obligation, more fully specified in contracts governing highway construction, frequently coincides with a mutual duty shared by the state to provide such warning as may be necessary to protect unwary motorists.

■ With respect to the claim of indemnity by Coons against Rajala, we hold as a matter of law there was no error in the court's failure to grant relief. Coons was not, as it asserts, a passive wrongdoer, subject only to vicarious liability. Although Rajala constructed the bypass, it was Coons who oiled and dusted it after the work was completed, and the evidence supports the conclusion that Coons was responsible for removing the reflectorized delineators. Under these circumstances, Coons has not established its right to indemnity against Rajala.

■ There was no general verdict submitted to the jury. They were simply directed to determine whether the various parties were negligent and, if so, whether such negligence was a proximate cause of the accident, and to determine the damages sustained by the drivers. In the course of his argument, counsel for Lafortune stated to the jury:

"But if I were simply to agree with Mr. Weyl and just say, answer all of these questions no, then Mr. Lafortune, at least, doesn't have to worry about a sum of money like that against him."

Lafortune was also a defendant as to Smith. Coons and Rajala thereupon moved for a mistrial on the authority of our decision in McCourtie v. United States Steel Corp. 253 Minn. 501, 93 N. W. (2d) 552, where we held it was error to reveal the consequences of a special verdict. The court itself thereafter indicated in its charge that the jury should determine the damages which resulted from defendants' negligence. It denied Coons' and Rajala's subsequent motion for a mistrial, being of the opinion that the error was harmless. We concur in that conclusion. In order to rectify these disclosures, plaintiff suggested a correc-

tive charge, such as that which we held rendered harmless similar error in Johnson v. O'Brien, 258 Minn. 502, 105 N. W. (2d) 244. Defendants Coons and Rajala declined the offer on the ground it would simply accentuate prejudice.

■ Defendant-appellants assign as error the admissibility of opinion testimony concerning what warning devices were customary and usual and the adequacy of those used. The rules governing expert testimony have been exhaustively considered in a number of our decisions.[1] The probative value of such testimony was a matter for the trial court to determine. Unlike the situation in some of the cases cited, the expert did not attempt to reconstruct the accident or establish the point of impact or the speed or line of travel of the vehicles. His testimony was directed at procedures customarily taken by contractors in posting warnings. This is not information necessarily within the ordinary knowledge of jurors. Consequently, we find no impropriety in the court's exercising its discretion to receive such testimony into evidence.

■ Finally, we have considered the question of whether it was error to admit the Manual on Uniform Traffic Control Devices for Streets and Highways of the State of Minnesota, required by Minn. St. 169.06, subd. 1. On two grounds, we conclude it was not. First, the manual was received without objection and referred to by both sides before defendants made belated objection to its use. Secondly, the specifications which were part of the contract directed that signs and markers shall conform to the manual.

Affirmed.

MR. JUSTICE KELLY, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

[1] Beckman v. Schroeder, 224 Minn. 370, 28 N. W. (2d) 629; Boutang v. Twin City Motor Bus Co. 248 Minn. 240, 251, 80 N. W. (2d) 30, 39; Carmody v. Aho, 251 Minn. 19, 23, 86 N. W. (2d) 692, 695; and Murphy v. Hennen, 264 Minn. 457, 464, 119 N. W. (2d) 489, 493.