THOMAS W. ERSCHENS, A MINOR, BY
LEO J. ERSCHENS, HIS FATHER AND NATURAL
GUARDIAN, AND ANOTHER v. COUNTY OF LINCOLN.

177 N. W. (2d) 28.

May 1, 1970—No. 41836.

*Schermer, Gensler, Schwappach, Borkon & Ramstead* and *Irvin E. Schermer,* for appellants.

*Mordaunt, Walstad, Cousineau & McGuire* and *John H. Mordaunt,* for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, Sheran, and Frank T. Gallagher, JJ.

ROGOSHESKE, JUSTICE.

Appeal from an order of the district court denying plaintiffs' motion for a new trial.

The action arose out of a December 7, 1967, accident in which plaintiff Thomas Erschens, a minor, sustained brain injury and resulting amnesia. The accident occurred when an automobile owned by his father, plaintiff Leo J. Erschens, and driven by Thomas passed through a barricade and upset, coming to rest on its top at the bottom of an excavation which had been made in the roadway preparatory to constructing a new bridge on Lincoln County State-Aid Road. No. 13.[1] Although there were no eyewitnesses, it appears that the accident occurred at about midnight when plaintiff-driver was proceeding in a westerly direction on No. 13, which was obscured by a dense fog at the time.

Defendant Lincoln County through its county board ordered an old and narrow bridge, located at a low spot in the road, replaced. Pursuant to that order and shortly before the accident,

[1] Prior to trial a summary judgment of dismissal was entered in favor of defendant Diamond Lake Township, the township in which the accident occurred.

two county employees, under the direction of defendant county's engineer, excavated a pit to the west of the old bridge. The excavation was 36 feet long from east to west, about 29 feet wide, and 8 feet deep. The east edge of the excavation was 60 feet from the west end of the old bridge, which was 16 feet in length. A wooden barricade which extended across the roadway, and upon which were painted diagonal black and white stripes and the words "DRIVE CAREFULLY" and "UNDER CONSTRUCTION," was placed 35 feet west of the west end of the old bridge about midway between the bridge and the excavation. In addition, a yellow flasher was positioned at the top of the barricade and another was placed on top of a 2 1/2- to 3-foot barrel located near the south end of the barricade. A temporary bypass had been constructed around the north side of the excavation in order to permit continued use of the road. The bypass began a short distance west of the bridge and east of the barricade and ran in a curve to the north around the excavation, rejoining No. 13 immediately west of the excavation.

In addition to the barricade, the only warning signs for drivers approaching from the east were two 24-inch-square signs, which were neither illuminated nor reflectorized; one, erected 284 feet east of the center of the old bridge, contained the warning "ROAD CONSTRUCTION AHEAD"; the other, 194 feet east of the center of the bridge, contained the warning "TEMPORARY BY-PASS AHEAD." It is undisputed that the signs warning of the hazard were not in conformity with the state highway commissioner's Manual on Uniform Traffic Control Devices,[2] required to be adopted by Minn. St. 169.06, subd. 1, of the Highway Traffic Regulation Act.

---

[2] Relevant provisions of the manual are the following:
"1B-38 ROAD CLOSED SIGN * * *
* * * * *
"* * * If a temporary or detour route begins at a barricade, a Temporary Route assembly (sec. 1D-19) with a directional arrow (sec. 1D-16) or a Detour Arrow sign (sec. 5B-39) should be erected on or in ad-

Plaintiff-driver was proceeding westerly on No. 13, a gravel road characterized by witnesses as a low-speed highway having a daily traffic count of about 100 cars, when his car passed through the barricade on the east end of the excavation.

vance of the barricade, wherever it will be most effective."

"1C-2 DESIGN OF WARNING SIGNS

\* \* \* \* \*

"All warning signs having significance during the hours of darkness shall be reflectorized or illuminated.

"\* \* \* The standard size for diamond-shaped signs, except where otherwise specified, shall be 30 inches by 30 inches. Where conditions of \* \* \* special hazard require greater visibility or emphasis, larger signs should be used, with symbol or legend enlarged approximately in proportion to outside dimensions."

"5B-17 CONSTRUCTION APPROACH WARNING SIGNS

"Where major construction or maintenance is under way on a rural highway and any part of the roadway is obstructed or closed, it is necessary to give special advance warning, and for this purpose a series of Construction Approach Warning signs is provided in the following sections. Because of their importance these signs shall have a standard size of 48 inches by 48 inches."

"5B-18 APPLICATION OF CONSTRUCTION APPROACH WARNING SIGNS

"Construction Approach Warning signs are for the purpose of alerting traffic, well in advance, to serious obstructions or restrictions due to roadwork. In rural areas where space permits there should be at least three such signs, at 500, 1,000 and 1,500 feet, respectively, in advance of the point of restriction \* \* \*."

"5B-19 ADVANCE ROAD CONSTRUCTION SIGN \* \* \*

"The Advance Road Construction sign is intended for use in advance of road construction projects as a general warning of possible obstructions or restrictions due to such work. It carries the legend ROAD CONSTRUCTION, followed by 1500 FT (W20-1a), 1000 FT (W20-1b), 500 FT (W20-1c) or AHEAD (W20-1d). Following its erection at 1,500 feet, it may be erected also at 1,000 feet and at 500 feet, or the more specific messages of other Construction Approach Warning signs may be used as may be appropriate."

"5B-20 ADVANCE DETOUR SIGN \* \* \*

"The Advance Detour sign is intended for use in advance of a point at which traffic is diverted over a temporary roadway or route. It carries the legend DETOUR, followed by 1500 FT (W20-2a), 1000 FT (W20-

Pictures and other evidence indicated tire marks for a distance of 30 feet to the east edge of the excavation. The pictures and testimony of the sheriff establish that there was a piece of chrome from the automobile embedded in the west bank of the excavation at a point about 18 inches from the top of the excavation. The chrome was approximately 1 inch wide and 5 feet in length. Just above where the chrome was embedded, there was an indentation where the earth had been pushed up on the west bank of the excavation. Professor Adolph Lee, an expert witness called by defendant, described the indentation as that of a wheel mark. On the basis of a hypothetical question, he was permitted to express his opinion that the speed of the vehicle at the time of the accident was at least 50 miles per hour.

The minor's claim for personal injuries and the father's claim for medical expenses and damages to the car were tried on the theory that defendant county was negligent in failing to properly warn of the existence of the hazard caused by the excavation.

---

2b), 500 FT (W20-2c), or AHEAD (W20-2d). It may be used in repetition or in combination with other appropriate Construction Approach Warning signs."

"5B-3 POSITION OF SIGNS

\* \* \* \* \*

"Where normal open highway speeds prevail on the approach to the work site, advance warning signs should be placed at least 750 feet in advance of the condition to which they are calling attention. Where a series of advance warning signs are used, the warning sign nearest the work site should be placed 500 feet from the point of restriction with the additional signs at 500-foot intervals. Where prevailing speeds are low in the approach to the hazardous area, signs may be placed at 300-foot spacings in the immediate vicinity of the work \* \* \*."

Plaintiffs' witness, a retired traffic engineer from the State Highway Department, testified that the signs did not conform with the minimum requirements adopted by the highway commissioner under Minn. St. 169.06 in five respects: (1) They were not reflectorized; (2) they were 24 inches by 24 inches rather than 30 inches by 30 inches; (3) they were less than 300 feet apart; (4) there were no arrow signs pointing to the direction of the bypass around the excavation; and (5) there was no series of signs showing the distance to the bypass in 500-foot spacings.

The trial court refused plaintiffs' request to give the requirements of the commissioner's manual the force and effect of law in its instructions to the jury. The jury, however, was instructed that the manual, which was received in evidence, could be considered by them as an acceptable practice for warning of construction hazards by governmental units engaged in road construction work in determining whether defendant county was negligent. See, Larson v. Township of New Haven, 282 Minn. 447, 165 N. W. (2d) 543. The trial court also included in its instructions the issue of contributory negligence of plaintiff-driver. The jury returned a general verdict for defendant despite instructions which would have permitted the father, as owner-bailor of the automobile, to recover damages to the automobile even though the driver were found to be contributorily negligent. Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. (2d) 406; Wick v. Widdell, 276 Minn. 51, 149 N. W. (2d) 20. Thus, implicit in the verdict is a finding either that defendant county was not negligent or that, if it was negligent, such negligence was not a proximate cause of the accident.

Minn. St. 169.06, subd. 3, provides:

"Local authorities in their respective jurisdictions shall place and maintain such traffic-control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this chapter or local traffic ordinances, or to regulate, warn, or guide traffic. *All such traffic-control devices hereafter erected shall conform to the state manual and specifications.*" (Italics supplied.)

The pivotal issue on this appeal is: Does this provision create a statutory duty on the part of local authorities to erect only traffic-control devices which conform to the commissioner's manual, a violation of which would establish a prima facie case of negligence and, absent any excuse of justification, compel a finding of negligence as a matter of law?

Plaintiffs urge that the last sentence of subd. 3 and our

prior decision in State v. Adams, 273 Minn. 228, 140 N. W. (2d) 847, compel a holding that the requirements of the commissioner's manual were adopted as part of the Highway Traffic Regulation Act by reference, giving them the force and effect of law. While the last sentence of subd. 3, italicized above, if read alone, does support plaintiffs' argument, if read as a part of the whole subdivision, it appears to conflict with the preceding sentence, which vests in local authorities discretion in the placement and maintenance of traffic-control devices on highways other than state trunk highways. Because of this ambiguity, it is at least arguable that local authorities have no statutory duty to erect any traffic signs on local highways, but if they undertake to do so and fail to comply with the manual, they are guilty of violating the Highway Traffic Regulation Act. Such an interpretation would surely pervert the objectives of the statute and produce absurd results. It does, however, point up the ambiguity of the statute and the soundness of the trial court's reasoning, with which we agree, that if local authorities are to be subjected to the requirement of compliance with the manual and to the consequences of noncompliance, "the statutory provision so providing should be clear and unambiguous, and should clearly evidence the legislative intent to establish the responsibility for failure to so comply." As we have repeatedly said:

"* * * Ordinarily, legislative enactments will not effect changes in the common law beyond those clearly indicated in their specific terms." Fuller v. City of Mankato, 248 Minn. 342, 347, 80 N. W. (2d) 9, 12.

The interpretation urged by plaintiffs changes the common law in that it would establish a standard of conduct extending beyond the duty to use reasonable care in the placement and maintenance of traffic-control devices. The relevant provisions of the Highway Traffic Regulation Act do not clearly and unambiguously modify the common-law duty of reasonable care. However desirable it is to standardize the size, shape, color, and placement of

highway signs on all public highways, absent clear and specific statutory provisions enlarging the potential liability of the host of local units of government affected, we must interpret the subdivision as giving local authorities discretion with respect to the placement and maintenance of traffic-control devices without enlarging or subtracting from their common-law liability. Furthermore, § 169.06, subd. 1,[3] specifically exempts the adoption of the commissioner's manual from the provisions and requirements of §§ 15.0411 to 15.0422, specifying the procedures which must be followed by state agencies in the adoption of rules and specifically providing that rules adopted in conformity with these statutory procedures shall have the force and effect of law. § 15.0413, subd. 1. It is our opinion that the express statement in § 169.06, subd. 1, exempting the commissioner's manual from the statutory provision giving properly adopted agency rules the force and effect of law manifests a legislative intent that the commissioner's manual should not have the force and effect of law.

Nor are we persuaded that our prior decision in State v. Adams, *supra,* requires a reversal in this case. The Adams case was a criminal prosecution, and it has always been the rule that all reasonable doubts about the meaning of a penal statute should be resolved in favor of the accused unless the language is plain, exact, and precise. State v. End, 232 Minn. 266, 45 N. W. (2d) 378. More important however, the questionable sign in the Adams case was on a state trunk highway. Section 169.06, subd.

---

[3] "The commissioner shall adopt a manual and specifications for a uniform system of traffic-control devices consistent with the provisions of this chapter for use upon highways within this state. Such uniform system shall correlate with and so far as possible conform to the system then current as approved by the American Association of State Highway Officials. The adoption of the manual and specifications by the commissioner as herein provided is specifically exempted from the provisions and requirements of Minnesota Statutes, Sections 15.0411 to 15.0422 and acts amendatory thereto."

2, requires that on trunk highways the commissioner erect only signs which conform to the manual, and the last sentence of that section further prohibits local authorities from erecting any signs on trunk highways without the permission of the commissioner. Thus, neither the commissioner nor the municipality involved in that case, acting with the consent of the commissioner, could put up signs other than those conforming to the manual. The road in the instant case is a county state-aid road and is wholly under the jurisdiction of the county. It also appears from the briefs in the Adams case that the parties to that action conceded that local authorities were required in erecting traffic-control devices on trunk highways to conform to the commissioner's manual. Thus, the question presented was not before the court in the Adams case.

We therefore hold that defendant's undisputed failure to erect warning signs in conformance with the commissioner's manual did not require the trial court to instruct the jury that defendant county was negligent as a matter of law.

Finally on this issue, it should be noted that the commissioner's manual provides that while the standards set forth in the manual are the minimum desirable standards for normal open-highway situations, "[w]here speeds and volumes are relatively low, where the hazard is clearly apparent, or where the maintenance operation is short in duration, less than the 'minimum' protection prescribed for normal open highway conditions may be adequate." The clear implication is that the requirements of the manual are not to be inflexibly applied and nonconformance with the provisions of the manual may at times be permissible. Thus, under the evidence in this case, it would appear that even if the commissioner's manual had been held to have the force and effect of law, plaintiffs would not automatically be entitled to an instruction that defendant county was negligent as a matter of law for failure to strictly comply with the requirements of the manual. With this in mind, it may be observed that the trial court afforded plaintiffs the maximum benefit available from the com-

missioner's manual since the jury had the benefit not only of the minimum requirements of the manual but also expert opinion testimony as to their application to the facts and circumstances of this case.

■ Plaintiffs also contend that defendant county was required by § 160.16, subd. 2, to post signs warning that the road was closed and describing the direction and length of the detour, and that failure to do so was negligence. It is true that subd. 1 of § 160.16 requires road authorities when contracting for the construction and improvement of a road to include in such contracts a provision requiring the contractor to erect suitable warnings and subd. 2 of that section sets forth the type of warnings to be used when the construction work necessitates a closing of the road. However, it is manifest that § 160.16 applies only to contractual obligations to be imposed upon a contractor and has no application where the construction work is performed by employees of the governmental unit.

■ Finally, plaintiffs urge that, whether or not we approve the court's instructions, the evidence established defendant county's negligence as a matter of law. We believe the issue was for the jury. Without delineating the factual basis therefor, there is ample evidence upon which the jury could have found that defendant county was either not negligent in failing to adequately warn of construction hazards or, more likely, that the plaintiff-driver's negligence was the sole cause of the accident.

Affirmed.