DAVID FERGUSON, A MINOR, BY BERTIE M. FERGUSON, HIS FATHER AND NATURAL GUARDIAN, AND ANOTHER v. ORVILLE S. BENSON.
LaVONNE FERGUSON AND ANOTHER v. SAME.
WOODRICH CONSTRUCTION COMPANY AND ANOTHER, THIRD-PARTY DEFENDANTS.
WILLIAM T. JOHANSON v. ORVILLE BENSON AND OTHERS.
ORVILLE BENSON AND ANOTHER v. WOODRICH CONSTRUCTION COMPANY.
SORENSON BROTHERS, INC., THIRD-PARTY DEFENDANT.

244 N. W. 2d 116.

June 18, 1976—Nos. 45370, 45371, 45372, 45373, 45374.

162

*Van Eps, Gilmore & Chantry, Duane E. Arndt,* and *Wayne D. Tritbough,* for appellant.

*Ross Muir* and *John Steward,* for respondent Benson.

*Baudler & Baudler* and *Bryan J. Baudler,* for respondent Johanson.

Heard before Kelly, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

MacLaughlin, Justice.

These negligence actions were brought by several plaintiffs injured in an automobile accident against two highway construction contractors for allegedly allowing dirt to be deposited on a highway and then failing to adequately remedy this hazardous condition or warn the public. The jury found that the contractors were 70-percent causally negligent for the injuries sustained by the plaintiffs. Sorenson Brothers, Inc., appeals from a denial of its motion for judgment notwithstanding the verdict or for a new trial. We affirm.

This action arises out of an automobile accident which occurred on the morning of July 13, 1966, on old Highway No. 218 north of the city of Austin, Minnesota. Respondent Orville Benson was traveling south toward Austin with his wife, Frances Benson, and his son, David, as passengers. It had been raining throughout the morning and was raining slightly when Benson attempted to negotiate a curve in the highway. As Benson started into the curve, he lost control of his vehicle. The Benson car slid across the center line and struck a car being driven by LaVonne Ferguson. Orville Benson, David Benson, LaVonne Ferguson, Joel Dean Ferguson, and David L. Ferguson were injured in the collision. Frances Benson died as a result of the accident.

The accident occurred on a portion of old Highway 218 which was within a highway construction zone. Woodrich Construction Company had entered into a contract with the Minnesota Highway Department to construct a new section of Highway 218 connecting Interstate No. 90 near Austin with old Highway 218 at a point approximately one mile north of where the accident oc-

curred. Woodrich subcontracted with appellant, Sorenson Brothers, Inc., to perform the grading portion of the contract. The contract required that Sorenson Brothers haul fill from the west side of old Highway 218 to the east side of the highway. At the time of the accident, the contractors had not begun any construction work on old Highway 218 but some equipment of Sorenson Brothers had crossed old Highway 218 at the north end of the curve where the accident occurred.

The Fergusons brought suit against Orville Benson for all damages arising out of the accident. Orville Benson in turn joined Woodrich and Sorenson Brothers as third-party defendants. A wrongful death suit and personal injury actions by Orville and David Benson were also brought against the contractors. The trial court severed the actions against the contractors from the original action against Benson. In that original action the jury returned a verdict in favor of the Fergusons against Orville Benson.

The third-party actions, the wrongful death suit, and the personal injury actions of Orville and David Benson were consolidated for trial. In these actions it was claimed that the contractors were negligent in allowing dirt to be deposited and remain on old Highway 218 near the curve where the accident occurred. It was also claimed that the contractors were negligent in failing to post adequate signs warning about the hazardous road condition.[1]

Although there was some conflict in the testimony, the evidence suggests that when the heavy equipment of Sorenson Brothers crossed old Highway 218 it deposited dirt upon the highway. When it rained this dirt turned to mud causing the surface of the roadway to become slippery and hazardous to vehicular traffic. The only traffic control and warning signs north of the accident site were a sign which read "ENTER CON-

---

[1] The subcontractor, Sorenson Brothers, Inc., assumed the defense in all of the actions for Woodrich, and it is conceded by Woodrich that the acts or failure to act by Sorenson was binding on Woodrich.

STRUCTION ZONE—PLEASE DRIVE CAREFULLY," a sign which indicated the curve, and a sign which posted a 55 miles per hour speed limit, a speed which was clearly excessive under the circumstances of this accident. During the trial, the court admitted into evidence a copy of the Manual on Uniform Traffic Control Devices of the Highway Department and allowed the jury to take this manual with them to the jury room. The trial court also excluded certain testimony offered by appellant as to the Highway Department's practice regarding the posting of the highway warning signs.

At the conclusion of the trial, the court instructed the jury that "if due care required, a contractor could use an advisory speed plate to caution the traveling public" about road conditions. The trial court also informed the jury that the finding of negligence against Orville Benson in the Ferguson suit was binding in this action. Accordingly, the jury was instructed to determine whether the contractors, Woodrich and Sorenson Brothers, were also causally negligent, and if so, what percentage of negligence should be attributed to them and what percentage to Benson. The jury returned a verdict finding the contractors 70-percent causally negligent and Orville Benson 30-percent causally negligent. This appeal followed the denial of motions for judgment notwithstanding the verdict or a new trial.

The issues raised are (1) whether the trial court erroneously instructed the jury that the contractors could post warning signs to caution the public about hazardous conditions on the road; (2) whether the trial court committed prejudicial error by admitting into evidence a copy of the Manual on Uniform Traffic Control Devices; and (3) whether the trial court committed prejudicial error by excluding from evidence testimony concerning the Highway Department's practice in regard to posting warning signs.

■ Minn. St. 169.06, subd. 2, provides in part:

"The commissioner shall place and maintain such traffic-control devices, conforming to the manual and specifications,

upon all state trunk highways as he shall deem necessary to indicate and carry out the provisions of this chapter or to regulate, warn, or guide traffic. * * *

"No other authority shall place or maintain any traffic control device upon any highway under the jurisdiction of the commissioner *except by the latter's permission.*" (Italics supplied.)

Relying on this statute appellant argues that it had no right or authority to place warning signs along the highway and that therefore the trial court erroneously submitted the case to the jury by instructing them that the contractors could have erected warning signs.

We reject this argument. Minn. St. 169.06, subd. 2, was never intended to prohibit a contractor from warning the public of hazardous road conditions. The statute specifically excepts from its coverage the placement of any traffic control device for which the commissioner has given his permission. By the contract with highway construction contractors, the commissioner gives contractors permission to erect warning signs whenever necessary to ensure the safety of the general public. The Standard Specifications for Highway Construction (Specifications) prepared by the Highway Department was an integral part of appellant's contract with the state of Minnesota. Section 1706 of the Specifications provides in part:

"The Contractor shall at all times conduct his operations and perform the work in such a manner as to ensure the least obstruction and interference to traffic.

"*The Contractor shall take adequate precautions to ensure the safety of the general public* and those who require access to abutting property." (Italics supplied.)

The principle that a construction contractor is legally responsible for taking whatever appropriate measures are necessary to ensure the safety of the public is reinforced by the second paragraph of section 1707 of the Specifications:

"The following provisions shall not in any way relieve the Con-

tractor of any of his legal responsibilities or liabilities for the safety of the public."

We have interpreted these standard provisions as conferring on highway construction contractors the right, and, indeed the duty, to take adequate measures to protect the safety of the public. In Dornack v. Barton Const. Co. Inc. 272 Minn. 307, 319, 137 N. W. 2d 536, 545 (1965), and again in Smith v. Lafortune, 288 Minn. 135, 141, 179 N. W. 2d 136, 139 (1970), we rejected the contention that contractors have no right or responsibility for posting warning signs. In those opinions we held:

"The fact that the contract gives certain assignments to the state involving warning signs, traffic control signs, and barricades does not eliminate the responsibilities of the contractor for the safety of the general public * * *."

Thus, we have made it clear that road contractors have a duty (288 Minn. 141, 179 N. W. 2d 140)—

"* * * to protect the public from snares, traps, and pitfalls by erecting appropriate warning signs while constructing or repairing public highways. This obligation, more fully specified in contracts governing highway construction, frequently coincides with a *mutual duty shared by the state to provide such warning as may be necessary to protect unwary motorists.*" (Italics supplied.)

We are not persuaded by appellant's attempt to distinguish the Smith and Dornack decisions on the ground that those cases involve situations where there was a diversion of traffic rather than merely interruptions on portions of the highway for limited periods of time. The fact that the danger to the public in this case is of a more temporary nature than in cases where there is a diversion of traffic does not relieve the contractor of its basic responsibility to protect the public.

Since a road contractor is in the best position to know of any dangerous conditions created by its activities, it is only logical that it be required to warn unwary motorists of such dangerous

conditions. This is especially true in the instant case where the hazardous condition created by the contractor is unlikely to be detected or immediately corrected by the Highway Department. Appellant's contract with the state of Minnesota did not, and indeed could not, relieve appellant of this underlying duty to warn the public of any hazardous condition created by its construction activities. Thus, the trial court did not err in instructing the jury that if due care required appellant could have posted warning signs.

■ Appellant claims that the trial court erred in admitting into evidence the Manual on Uniform Traffic Control Devices. Minn. St. 169.06, subd. 1, provides in part:

"The commissioner shall adopt a manual and specifications for a uniform system of traffic-control devices consistent with the provisions of this chapter for use upon highways within this state."

Pursuant to this authority, the commissioner adopted the manual which specifically states:

"The provisions for public protection established herein are for application by (1) State highway department, county, and municipal forces performing construction or maintenance operations on roads and streets, (2) *contractors employed in road construction or maintenance under contract to any governmental authority,* and (3) all others, including employees of public utility companies, performing any work on highways or so closely adjacent as to create hazards for the public or for themselves." (Italics supplied.)

Section 1701 of the Specifications, a part of appellant's contract, provides in part:

"The Contractor shall observe and comply with all laws, and with all regulations made in accordance with law, which may at any time or in any manner affect the equipment or materials used in the proposed construction, the conduct of the work, and those employed by him."

Thus, in the instant case, there is a contract which requires the contractor to conduct itself in accordance with applicable regulations, and there is a manual of specific regulations and provisions for public protection which apply to contractors employed in road construction.[2] The trial court instructed the jury that they *could* (not *must*) consider the provisions of the manual in determining the question of the contractors' negligence. In Poppenhagen v. Sornsin Const. Co. 300 Minn. 73, 81, 220 N. W. 2d 281, 286 (1974), we held that the admission of the manual is "purely discretionary with the trial court," but indicated that "the manual does not have the force and effect of law, and thus, a violation of the requirements of the manual would not compel a finding of negligence as a matter of law" (300 Minn. 80, 220 N. W. 2d 285). See, also, Erschens v. County of Lincoln, 287 Minn. 90, 177 N. W. 2d 28 (1970). We conclude that the admission of the manual, in the instant case, especially when viewed in the context of the trial court's instructions, was a proper exercise of its discretion.

■ During trial appellant sought to introduce testimony from various employees of the Highway Department as to the department's general practice or policy regarding the posting of warning signs. The alleged purpose of such testimony was to show that appellant did not have the right to erect warning signs. After listening to the offered testimony in chambers, the trial court excluded the testimony from evidence. In Hiedeman v.

---

[2] The provision in the manual which was deemed relevant to the question of whether the contractors exercised due care under the circumstances involved the posting of an advisory speed plate. The manual provides: "In conjunction with any warning sign, and only in combination with a warning sign, an Advisory Speed plate * * * may be used to indicate a suitable safe speed through the hazardous area. The speed shown on the plate is not intended as an enforceable limit. The Advisory Speed plate should show, in multiples of five miles per hour, a reasonable speed for normal conditions of weather and lighting. Too low a speed indication will be ignored and breed disrespect for all such signs."

Hiedeman, 290 Minn. 210, 187 N. W. 2d 119 (1971), we upheld a trial court's exclusion of testimony as to custom and usage with respect to the construction of electrical power lines. We stated (290 Minn. 217, 187 N. W. 2d 124):

"* * * We have repeatedly held that questions of materiality and relevancy of evidence rest largely in the discretion of the trial court, and its determination must control unless practical justice requires otherwise. Meemken v. O'Hara, 243 Minn. 138, 66 N. W. (2d) 601; Fulsom v. Egner, 248 Minn. 156, 79 N. W. (2d) 25; State, by Clark, v. Wolkoff, 250 Minn. 504, 85 N. W. (2d) 401."

Similarly, the admissibility of testimony as to the custom and practice of the Highway Department with respect to the posting of highway warning signs is a matter which rests largely in the discretion of the trial court. In addition, it is highly questionable whether the opinion of various employees of the Highway Department as to appellant's legal right to erect warning signs is even competent evidence. Given the broad discretion of the trial court in this area and the questionable quality of the offered testimony, we conclude that the trial court correctly excluded the testimony.

Affirmed.