Arnold MERVIN, Respondent,

v.

MAGNEY CONSTRUCTION COMPANY, et al., Appellants.

No. C2–86–837.

Court of Appeals of Minnesota.

Jan. 20, 1987.

Review Granted March 18, 1987.

Howard L. Kaplan, Goff, Kaplan & Wolf, P.A., St. Paul, for respondent.

James T. Martin, Gislason, Martin & Varpness, Edina, for appellants.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and FORSBERG, JJ.

## OPINION

SEDGWICK, Judge.

Respondent Mervin brought this negligence suit for injuries sustained in a fall from a ladder. Appellants were building a floodwall under a federal contract, and respondent was injured while acting as the government's representative on the project.

The jury found both respondent and appellants negligent, but that only appellants' negligence caused the accident. Respondent was awarded $750,000 in damages. This appeal is from the judgment and the order denying appellants' motion for a new trial.

## FACTS

In April 1977, appellant Magney Construction Company ("Magney Construction") contracted with the United States Army Corps of Engineers to construct a flood wall along the Minnesota River near North Mankato. Appellant C.W. Scheurer & Sons Construction, Inc. ("Scheurer Construction") subcontracted with Magney Construction to do excavating and related work. Construction began in the spring of 1977 and was completed in the spring of 1978.

Respondent Arnold Mervin was the Corps of Engineers' construction representative on the site. His responsibility was to monitor the project and ensure that the

contractors were complying with the contract's construction requirements.

The floodwall ranged from six to eleven feet in height, depending on the terrain, and from twelve to eighteen inches in width. It was one mile long when completed. Large rocks, called "riprap," were placed along the river side of the floodwall to prevent soil erosion.

In the summer of 1977, after several sections of the floodwall had been constructed, it became inconvenient to walk around the wall to get from one side to the other, so the construction workers and government inspectors began using ladders to go over it.

The ladders were set up in pairs. One ladder would be placed against one side of the floodwall, another placed on the other side, and they would cross over the top of the wall, forming an "X". At the top, a side rail of one ladder would be tied by rope to a side rail of the other ladder. The ladders would be set where the riprap was completed so they would not be in the way of riprap placement, and they would be moved from station to station along the floodwall as the riprap was laid. There was conflicting testimony about whether the bottoms of the ladders were ever staked to the ground.

The accident occurred on April 14, 1978. Mervin, Daniel Scheurer, a co-owner and employee of Scheurer Construction, and Larry Lapoint, Mervin's supervisor, were inspecting the project. They used the ladders to cross from the land side to the river side of the wall without difficulty. The accident occurred on the return trip.

First Scheurer and then Lapoint climbed up the river side ladder ahead of Mervin. When Mervin reached the top of the wall, Lapoint was at the bottom of the land side ladder, completing his descent. Mervin stepped onto the top of the wall, turned around and began to mount the road side ladder, using the rails of the river side ladder for support. He had placed one foot on the road side ladder when the river side ladder came loose, causing him to lose his balance and fall. As Mervin fell, the river side ladder came over the wall, and both ladders landed on him.

After the fall, Lapoint determined that the ladders had not been staked to the ground. He told Scheurer that in the future all ladders should be staked; all ladders were subsequently staked to the ground on both sides of the wall.

Mervin continued working the day of the accident. He began suffering from neck and back pains, however, and eventually stopped working on the advice of a physician. Mervin ended his employment with the Corps of Engineers in November 1979 based on a disability, and began receiving federal workers' compensation benefits. He has not worked since then.

Pursuant to a federal regulation, the construction contract required Magney Construction and its subcontractors to comply with the provisions of a Corps of Engineers safety manual (the "Manual"). One section of the Manual required that ladders be secured to the ground, and the trial court instructed the jury that an unexcused violation of this requirement was negligence per se.

The jury found by special verdict that Mervin and appellants were negligent, but that only appellants' negligence was a direct cause of the accident. They awarded Mervin $410,000 as compensation for lost wages and $340,000 for pain and suffering.

### ISSUES

1. Did the trial court err by instructing the jury that an unexcused violation of the Manual is negligence per se?

2. Did the trial court err by not applying the simple tool doctrine?

3. Is respondent's claim barred by the election of remedies provisions of Minn. Stat. § 176.061?

4. Are the damages excessive as a matter of law?

### ANALYSIS

I. *Negligence Per Se.*

Section 30B.10 of the Manual provides:

Ladders shall be secured by top, bottom, and sufficient intermediate fastenings to hold them rigidly in place and to support the loads which will be imposed upon them.

Army Corps of Engineers, *General Safety Requirements Manual,* EM 385-1-1 (1977).

Appellants argue that it was error to give a negligence per se instruction based on this provision because the Manual lacks the force and effect of law, and because this provision does not apply to "portable" ladders such as the ones at issue.

The Restatement (Second) of Torts provides that courts may adopt the requirements of legislative enactments or administrative regulations as defining the standard of care, the violation of which is negligence per se. *See* Restatement (Second) of Torts §§ 285-86, 288B (1965).

The Manual has never been enacted as a regulation or a statute. A federal regulation, however, required that the construction contract provide that "the Contractor shall comply with all pertinent provisions" of the Manual. 32 C.F.R. § 7-602.42 (1979). Mervin contends that the Manual was thereby incorporated by reference into the regulation and can therefore be the basis of a negligence per se instruction.

Mervin relies primarily on *Raymond v. Baehr,* 282 Minn. 109, 163 N.W.2d 51 (1968). In *Raymond,* tenants in a building damaged by fire had sought to introduce in evidence a building code and an ordinance which provided that all buildings had to conform to the building code. The trial court excluded the building code because it had never been published as required by the city charter for the enactment of ordinances.

The supreme court reversed. It noted that certain laws could be enacted through the doctrine of incorporation by reference. *Id.* at 111, 163 N.W.2d at 53. Valid use of the doctrine is limited to incorporation of statutes, ordinances, and public records. The *Raymond* court held that the building code qualified for incorporation by reference as a public record because the code was drawn by the city engineer and a committee of the council, read to the entire body, and apparently approved. *Id.* at 111-112, 163 N.W.2d at 53. The building code was therefore admissible and violation of it was negligence per se. *Id.* at 113, 163 N.W.2d at 53-54.

The Manual at issue here does not qualify for the doctrine. It is not a statute or ordinance and Mervin has made no showing that it was validly enacted as a regulation under federal law.

Additionally, this is not a case where the provisions at issue were clearly intended to have the force and effect of law but did not because of a defect in their enactment. *Compare* Restatement (Second) of Torts § 286 comment d, at 26 (stating provision that is ineffective because it was improperly enacted may still provide standard of care).

It was reversible error to give a negligence per se instruction based on the Manual. *See Lindstrom v. Yellow Taxi Co.,* 298 Minn. 224, 229, 214 N.W.2d 672, 676 (1974) (errors in jury instructions are "fundamental or controlling" if they " 'destroy the substantial correctness of the charge as a whole' " or result in "substantial prejudice"). A new trial is required.

We therefore need not address appellants' argument that the jury's finding on causation was against the weight of the evidence. We note that the issue of whether these ladders are covered by § 30B.10 is a question of fact for the jury.

## II. *Simple Tool Doctrine.*

Appellants argue the trial court erred by not granting their motion to dismiss based on the simple tool doctrine, and by not giving a jury instruction based on it.

The simple tool doctrine has been defined as follows:

A master is bound to exercise ordinary or reasonable care and diligence in keeping instrumentalities used by his employes safe by inspection and repair. An

exception to this rule is the so-called simple tool doctrine, under which there is no duty on the part of the master to inspect and discover defects, if any, in simple tools and instrumentalities the use of which is attended ordinarily with no danger and to warn the servant thereof. *Person v. Okes,* 224 Minn. 541, 543, 29 N.W.2d 360, 362 (1947).

The simple tool doctrine is an exception to the common-law duty of care an employer owes his or her employees. *Id.* Since Mervin was not appellants' employee, the doctrine cannot apply here.

### III. *Election of Remedies.*

Appellants contend that since Mervin has received disability benefits under a federal worker's compensation statute, he cannot sue them for damages because of the election of remedies provisions in Minnesota's worker's compensation act, Minn.Stat. § 176.061, subds. 1, 4 (1978).[1] These provisions state that in certain circumstances an injured employee must elect between receiving disability compensation from his employer and suing a third party for damages.

The supreme court has interpreted these provisions as not barring a tort suit by a plaintiff, such as Mervin, who received federal disability benefits. *Wagner v. City of Duluth,* 211 Minn. 252, 300 N.W. 820 (1941). Appellants argue that the election of remedies statute, as interpreted by *Wagner,* is unconstitutional. We need not reach that issue, however, because the statute is inapplicable for another reason besides the holding of *Wagner.*

The election of remedies doctrine only applies where (1) the employer and the third party were engaged on the same project; (2) their employees were working together on the project; and (3) in such a manner that they were subject to the same or similar hazards. *See Newland v. Overland Express, Inc.,* 295 N.W.2d 615, 620 (Minn.1980); *Crawford v. Woodrich Construction Co.,* 239 Minn. 12, 19–20, 57

N.W.2d 648, 653 (1953). Appellants have not made this showing.

In *Crawford,* the defendant had contracted with the state of Minnesota to construct a roadway. The plaintiff was employed by the state as an inspector on the project, and was injured while performing his inspection duties. He brought a tort action after receiving workers' compensation benefits. The defendant contended the suit was barred by the election of remedies doctrine.

The supreme court rejected this argument because it found that the first two of the above three requirements had not been met:

Here the state, plaintiff's employer, and the company clearly were not engaged in the same project. The state was not engaged in the project of building or repairing a road; its only connection with the project was that it had contracted for the road-building services of the company. It cannot be said that the state—or any other employer—which merely carries on a systematic inspection to insure that it is getting the quality of services for which it has obligated itself to pay under a construction contract is engaged in the same project as the contractor who performs the work. Furthermore, the plaintiff as an inspector herein was not engaged in the performance of the project. When he found a defect, he performed no services to correct such defect. Correction work was left entirely to employes of the company. Obviously plaintiff is not barred from prosecuting a common-law action against the company.

*Id.* at 21, 57 N.W.2d at 654.

This analysis applies with equal force here. Mervin's employer, the federal government, had contracted for the construction of the floodwall and merely carried out systematic inspections. Mervin corrected no defects himself, but only pointed them out to appellants. The trial court correctly held that the election of remedies doctrine does not apply.

---

1. All parties cite the 1978 version of the statute in their briefs.

## IV. *Excessive Damages.*

Finally, appellants argue the damages awarded are excessive as a matter of law. The jury awarded Mervin $750,000: $410,000 for past and future lost wages, and $340,000 for past and future pain and suffering. In denying appellants' motion for a new trial, the trial court ruled that the damages were not excessive.

The amount of damages sustained by a tort plaintiff is a fact question for the jury. *Koehler v. Kline,* 290 Minn. 485, 487, 185 N.W.2d 539, 541 (1971). A trial court is given the broadest possible discretion in determining whether a new trial should be granted for excessive damages. *Bisbee v. Ruppert,* 306 Minn. 39, 48–49, 235 N.W.2d 364, 371 (1975). On appeal from a denial of a motion for a new trial, the verdict must stand unless it is manifestly and palpably contrary to the evidence, viewed in a light most favorable to the verdict. *Dailey v. Wiborg,* 366 N.W.2d 736, 737 (Minn.Ct.App.1985). The test for setting aside an award as excessive is whether it shocks the conscience. *Verhel v. Independent School District No. 709,* 359 N.W.2d 579, 591 (Minn.1984).

Mervin testified that he still has pain in his lower back and neck from the accident which prevents him from sleeping through the night. He has difficulty doing small tasks like putting on socks and rising from bed, and he cannot sit comfortably for any length of time. Since the accident he has become irritable and short-tempered, and he can no longer enjoy the recreational activities he used to enjoy.

Mervin has not worked since leaving the Corps of Engineers based on a disability, and has been receiving federal workers' compensation benefits because of his disability. He has applied for several jobs since the accident but received no offers, apparently because of his medical condition. He applied to the federal government for retraining, but has not received such training.

Dr. John White, an orthopedic surgeon who has regularly treated Mervin since 1980, testified that Mervin suffers from degenerative changes of his spine, resulting in chronic low back pain and a 20% permanent physical disability. Half of the disability, Dr. White testified, was caused by the accident and half was due to pre-existing conditions. Dr. White testified that because of the accident Mervin would never be able to return to his "previous occupation status."

The jury also heard testimony from Dr. Mordecai Haber, a psychiatrist who twice examined Mervin at the request of the federal workers' compensation division. Dr. Haber testified that, as a result of the accident, Mervin suffers from two psychiatric disorders (as defined in DSM III): (1) psychological factors affecting physical condition, and (2) moderate dysthmic disorder.

Mervin also called as an expert witness Robert Lessne, a "vocational rehabilitation employment ergonomic and economic specialist" by profession. Lessne testified that Mervin is effectively unable to work because he could only manage a minimum-wage job in an extremely sheltered and flexible environment, and taking such a job would be catastrophic to his ego. Lessne calculated Mervin's total wage loss to be $512,516.60, broken down as follows: $171,810.90 in past wage loss; $100,705.70 as the present value of future wage loss; and $240,000 in lost pension benefits.

Appellants called no witnesses to rebut this expert testimony on damages. They cite three reasons why the award is excessive.

First, they assert that $410,000 is excessive compensation for lost earnings and benefits, because that amount would yield $29,000 annually at a 12% rate of return, while Mervin never earned more than $23,000 per year. Appellants cite *Hallada v. Great Northern Railway,* 244 Minn. 81, 69 N.W.2d 673 (1955), for the proposition that when a plaintiff could live off the investment return for his expected life span without touching the principal, a new trial is justified. However, *Hallada* has been overruled on this point. *Lamke*

*v. Louden,* 269 N.W.2d 53, 56 (Minn.1978); *Busch v. Busch Construction Co.,* 262 N.W.2d 377, 397 (Minn.1977).

Appellants next cite Dr. White's testimony that half of Mervin's disability was due to his pre-existing condition. There was no evidence that Mervin's pre-existing condition prevented him from working or caused any pain or suffering prior to the accident. Dr. White testified that the cause of his inability to return to work as a civil engineer was the permanent injury resulting from the accident.

■ Finally, appellants assert there was "insufficient foundation" for Dr. Haber's testimony that the accident caused Mervin's psychiatric disorders, because he was unaware of Mervin's pre-existing condition of ankling spondylitis and had only examined Mervin twice. Appellants did not object to his testimony at trial. Moreover, Dr. Haber testified that he knew that Mervin had spondylitis prior to the accident. There was no evidence Mervin suffered from psychiatric disorders prior to the accident. The fact that Dr. Haber saw Mervin only twice was for the jury to consider in weighing his testimony.

The evidence supports the jury's award of damages.

### DECISION

The trial court erred in instructing the jury that an unexcused violation of the Manual is negligence per se. It correctly ruled that the simple tool doctrine does not apply and that Mervin had not elected his remedy of receiving disability benefits. The damages were not excessive as a matter of law.

A new trial is required on the issues of negligence and causation. The issue of damages has been fairly litigated and need not be retried. *See Bilotta v. Kelley Co.,* 346 N.W.2d 616, 623–24 (Minn.1984).

Affirmed in part, reversed in part and remanded.