Arnold MERVIN, Respondent,

v.

MAGNEY CONSTRUCTION COMPANY,
et al., Petitioners, Appellants.

No. C2–86–837.

Supreme Court of Minnesota.

Dec. 11, 1987.

James T. Martin, Edina, for petitioners, appellants.

Howard L. Kaplan, St. Paul, for respondent.

COYNE, Justice.

This action arises out of a personal injury sustained by a government inspector who fell from a ladder at the site of a construction project. The trial court instructed the jury that a contractor's unexcused failure to comply with the provisions of the Corps of Engineers General Safety Requirements Manual, as required by the construction contract, constituted negligence per se. The jury found all parties negligent but that only the negligence of defendants was a direct cause of the accident, and the jury determined that plaintiff had sustained damages in the amount of $750,000. The court of appeals reversed and remanded for retrial on the issue of liability only. *Mervin v. Magney Constr. Co.*, 399 N.W.2d 579 (Minn.App.1987). We affirm.

In April 1977, defendant Magney Construction Company contracted with the United States Army Corps of Engineers to build a floodwall along the Minnesota River near North Mankato. Magney subcontracted the excavation, riprapping and related work to defendant C.W. Scheurer & Sons Construction, Inc. The construction contract required compliance with the pertinent provisions of the Corps of Engineers manual entitled "General Safety Requirements Manual." Section 30.B.10 of the manual provides as follows:

> Ladders shall be secured by top, bottom, and sufficient intermediate fastenings to hold them rigidly in place and to support the loads which will be imposed upon them.

During the summer and fall of 1977 a floodwall 6 to 11 feet high, 12 to 18 inches wide at the top, and almost a mile long was built. As construction progressed, it became inconvenient to walk around the wall to reach the other side, and the workers and government inspectors climbed over the wall. The wall was complete before cold weather interrupted the project. When work resumed the following spring, on about April 10, 1978, defendant Scheurer was engaged in laying riprap—stones about the size of basketballs—along the river side of the wall to prevent soil erosion. On April 14, 1978, plaintiff, his supervisor, and a representative of Scheurer climbed over the wall to inspect riprap placement along the river. Using ladders placed against the wall for that purpose, the three men crossed over to the river side without incident. Two of the men returned

safely to the landward side, but the plaintiff fell from the top of the floodwall.

The trip over the wall was negotiated over single-unit ladders set up in pairs, one on each side of the wall. The ladders extended beyond the top of the wall and there criss-crossed, forming an "X". At the direction of the plaintiff, who was a construction representative of the Corps of Engineers, the adjoining side rails of the ladder were tied together where they intersected above the wall. The plaintiff climbed the river side ladder and stepped from the ladder to the top of the wall. He then turned around and, arching his back while holding onto the rails of the river side ladder, attempted to maneuver past the extended portion of the river side ladder and step onto the landward or roadside ladder. However, the plaintiff fell as he was crossing beneath the portion of the river side ladder which extended over the top of the floodwall. The plaintiff was holding onto the top of the river side ladder; with the wall acting as a fulcrum, the bottom of the ladder swung upward; and the ladder flipped over the wall. The attached roadside ladder was pulled down as well, and the ladders struck the plaintiff.

Plaintiff continued working on the day of his fall. About 10 days later he sought medical treatment for neck and back pain. Plaintiff continued working for 19 months before retiring on disability status at age 54.

The ladders were not secured at the bottom when the accident occurred. Whether the ladders had ever been secured at the bottom was a matter of dispute. There was testimony that the ladders had been staked during the 1977 construction season; there was testimony that the ladders had never been staked. After the accident, Scheurer staked the ladders. Portions of riprap had to be moved in order to stake a ladder on the river side of the wall.

The trial court instructed the jury that an unjustified violation of section 30.B.10 of the Corps of Engineers Manual constituted negligence per se. The jury found both plaintiff and defendants negligent but found only the defendants' negligence a direct cause of the accident, and the jury set plaintiff's damages for wage loss and loss of earning capacity at $410,000 and for pain and suffering at $340,000. Holding that the trial court erred in instructing the jury that, absent some justification, a violation of section 30.B.10 amounted to negligence per se, the court of appeals reversed and remanded for a new trial on liability only. *Mervin v. Magney Constr. Co.,* 399 N.W.2d 579, 585 (Minn.App.1987).

The initial question with respect to the propriety of the trial court's instruction is the applicability of section 30.B.10 of the manual to the ladders involved in the accident. There is no evidence that the manual was ever formally adopted as a regulation. *See B–R Dredging Co. v. Rodriguez,* 564 S.W.2d 693 (Tex. 1978). It was, however, incorporated by reference into the construction contract. Whether the question be treated as one of interpretation and application of administrative regulation, as do the parties, or of contract, the applicability of section 30.B.10 is for the court. Whether section 30.B.10 has been violated is a question of fact for the jury. *See Anderson v. Ohm,* 258 N.W.2d 114, 117 (Minn. 1977); *Turner v. Alpha Phi Sorority House,* 276 N.W.2d 63, 66 (Minn. 1979).

■ Defendants contend that section 30.B.10 applies only to permanently fixed ladders, not to ladders of the kind workers used to climb over the floodwall. Securing a portable single-unit ladder at the top, bottom, and sufficient intermediate points to hold it rigidly in place is, they argue, impracticable. Plaintiff points out, however, that subsections 3, 5, 6, 7, and 15 of section 30.B expressly refer to "portable" ladders; subsections 12 and 13 of section 30.B expressly refer to "fixed" ladders; section 30.B.10, however, merely refers to "ladders," without qualifying language. While the pertinent section of the manual must be characterized as ambiguous, there is no extrinsic evidence of prior or contemporaneous negotiations bearing on the meaning of section 30.B.10, but only conclusory statements based on a post-accident reading of the manual. Accordingly, the trial court properly treated the construc-

tion and application of section 30.B.10 as a question of law. *Turner*, 276 N.W.2d at 66. On appeal the party claiming error bears the burden of establishing that the trial court erred. *City of Brooklyn Center v. Metro. Council*, 306 Minn. 309, 314, 243 N.W.2d 102, 106–7 (1975); *Midway Center Associates v. Midway Center, Inc.*, 306 Minn. 352, 356–57, 237 N.W.2d 76, 78–79 (1975). While both constructions are plausible, we are not persuaded that the trial court's conclusion that section 30.B.10 was applicable to the ladders used to climb over the wall was clearly erroneous.

■ Having decided section 30.B.10 was applicable to the ladders used to climb over the wall, the trial court adopted the requirements of the manual as the standard of care and instructed the jury that an unexcused violation of section 30.B.10 constituted negligence per se.[1] Although the Corps of Engineers Manual is neither a legislative enactment nor an administrative regulation, the trial court attributed to the manual the force of law on the theory that it was incorporated by reference into the Armed Services Procurement Regulations. 32 C.F.R. § 7–602, –602.42(a) (1976). The procurement regulations are, of course, formally adopted administrative regulations which have the force and effect of law. *Paul v. United States*, 371 U.S. 245, 255, 83 S.Ct. 426, 433, 9 L.Ed.2d 292 (1963). For two reasons, however, reliance on the doctrine of incorporation by reference articulated in *Raymond v. Baehr*, 282 Minn. 109, 163 N.W.2d 51 (1968), to elevate the manual to the status of an administrative regulation having the force of law is misplaced.

In the first place, the ordinance considered in *Raymond* specifically required all buildings to be constructed in compli-

ance with the city building code, which was on file in the office of the Brainerd city clerk. 282 Minn. at 111, 163 N.W.2d at 52. The Armed Services Procurement Regulations do not expressly incorporate the manual by reference. The procurement regulations merely provide that "normally" a clause requiring compliance with the manual is to be included in contracts let by the Corps of Engineers. 32 C.F.R. § 7–602, –602.42(a) (1976).

More importantly, the Brainerd building code was adopted by the city council with the intention and expectation that it would have the force and effect of law, but the enactment was defective: the building code had not been published in compliance with the city charter requirements for the enactment of ordinances. Because there was no evidence that the defendants had been prejudiced by the lack of publication, this court held in *Raymond* that violation of the building code constituted negligence per se. 282 Minn. at 112–13, 163 N.W.2d at 53–54. The Corps of Engineers Manual, on the other hand, was not designed as a law or an administrative regulation and has never been subjected to either the legislative process or the rulemaking safeguards of the Administrative Procedure Act, 5 U.S.C. § 553 (1982). Restatement (Second) of Torts § 286 does not contemplate taking the determination of the standard of care from the jury in order to entrust it to the anonymous compilers of a safety manual.

■ The plaintiff contends, however, that even if the manual does not have the force and effect of law, incorporation of the safety requirements provided in the manual established the standard of care for performance of the contract and made violation negligence per se. The argument

---

**1.** As the trial court recognized, Minnesota has long followed the standard of care criteria set out at Restatement (Second) of Torts § 286 (1965):

> The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
> (a) to protect a class of persons which includes the one whose interest is invaded, and

> (b) to protect the particular interest which is invaded, and
> (c) to protect that interest against the kind of harm which has resulted, and
> (d) to protect that interest against the particular hazard from which the harm results.

*See Scott v. Indep. School Dist. No. 709, Duluth*, 256 N.W.2d 485, 488 (Minn. 1977).

confuses contract obligations, which are voluntarily assumed, with tort obligations, which are fixed and imposed by the law itself without regard to the consent of the parties. *See generally* W. Keeton, *Prosser and Keeton on the Law of Torts*, § 92 (5th ed. 1984). This court has consistently held that the standard of care owed to others by a contracting party is not fixed by the terms of the contract.

For example, contracts for the repair or construction of highways customarily require the contractor to perform certain acts intended to protect the traveling public. In *Foster v. Herbison Constr. Co.*, 263 Minn. 63, 64, 69, 115 N.W.2d 915, 916, 919 (1962), we held that a contractual requirement that the contractor "continually maintain a smooth and drained roadway over which vehicular traffic can move safely * * *" was admissible as evidence of the contractor's negligence. *See also Dornack v. Barton Constr. Co.*, 272 Minn. 307, 317–18, 137 N.W.2d 536, 544 (1965) (standard of care owed by contractor to traveling public not fixed by terms of its contract with the state, which required erection of barricades and warning signs, but terms of contract are relevant in evaluating the reasonableness of the contractor's conduct). Nor is the rule altered by the specificity of the contractual requirements. On at least three occasions, in the course of holding that the admission of the Manual on Uniform Traffic Control Devices adopted by the commissioner of transportation pursuant to Minn.Stat. § 169.06, subd. 1, is purely discretionary with the trial court, we have pointed out that the manual does not have the force and effect of law and that, therefore, a violation of the requirements of the manual does not compel a finding of negligence as a matter of law. *Ferguson v. Benson*, 309 Minn. 160, 168, 244 N.W.2d 116, 120–21 (1976) (admission into evidence affirmed); *Poppenhagen v. Sornsin Constr. Co.*, 300 Minn. 73, 81, 220 N.W.2d 281, 285–86 (1974) (exclusion affirmed). *See also Erschens v. County of Lincoln*, 287 Minn. 90, 177 N.W.2d 28 (1970).

 Defendants also complain of the trial court's refusal to apply the simple tool doctrine, an exception to the employer's common law obligation to furnish employees reasonably safe tools. An employer has no duty to the employee to inspect simple or common tools to discover or remedy defects arising from ordinary use. *Dally v. Ward*, 223 Minn. 265, 267, 26 N.W.2d 217, 218 (1947). Nevertheless, whether the tool be simple or complex, when a third party is injured, the employer is vicariously liable for his employee's negligence in using a defective tool as well as the employee's negligent use of a perfect tool.

Finally, defendants argue that the award of damages in the amount of $410,000 for past and future loss of earnings and $340,000 for pain and suffering is excessive as a matter of law. Certainly, the award is generous whether tested by the statutory discount provision of Minn.Stat. § 604.07 (1986), enacted subsequent to the trial of this matter, or the standard of reasonableness laid down in *Hallada v. Great Northern Ry.*, 244 Minn. 81, 99, 69 N.W.2d 673, 687 (1955):

> Whatever process is adopted in fixing an injured person's damages, the reasonableness of the lump sum awarded by the jury must, in the last analysis, also be tested from the unitary standpoint of what total financial benefits that lump sum will confer upon the injured person as a means of making him financially *whole*.

In *Hallada* we went on to hold that the verdict was excessive because the damage award, when invested, would yield an annual return in excess of plaintiff's pre-injury earning capacity, leaving the principal sum unimpaired at the end of his life expectancy. 244 Minn. at 95–98, 69 N.W.2d 685–87.

 The rule enunciated in *Hallada* has since been narrowed in recognition of the character of an award for pain and suffering and the difference between past and future medical expenses and income loss. *Busch v. Busch Constr., Inc.*, 262 N.W.2d 377, 397 (Minn. 1977). An injured plaintiff is not required to invest that portion of the award designed as reimbursement for medical expenses already incurred

and wages lost prior to trial and as compensation for pain and suffering and to use the investment income for future medical expenses and future wage loss. *Id.* A reasonable return on that portion of the award intended to compensate plaintiff for future wage and pension loss would not in this case exceed plaintiff's pre-injury earning capacity. As we have remarked on other occasions, appellate courts are disinclined to interfere with damage awards unless it clearly appears that there has been an abuse of judicial discretion. *E.g., Cameron v. Evans,* 241 Minn. 200, 209, 62 N.W.2d 793, 799 (1954). On the record before us, we cannot say that the verdict shocks the conscience, *Verhel v. Indep. School Dist. No. 709,* 359 N.W.2d 579, 591 (Minn. 1984), or that the trial court abused its discretion in permitting the verdict to stand.

Accordingly, we affirm the decision of the court of appeals and remand for retrial on the issue of liability only.

POPOVICH, J., took no part in the consideration or decision of this case.